Brin v. Craig.

# Harris Brin v. John C. Craig.

## Gen. No. 13,773.

1. INJUNCTION—*when issuance of, without notice erroneous.* An injunction is erroneously issued without notice where it appears (1) that although there is an avowed belief of irreparable injury there is no source of information given upon which that belief is founded; (2) that there was sufficient time for service of notice without opportunity for irreparable injury resulting between receipt of notice and time of application; (3) that there was financial responsibility upon the part of the defendant to respond in damages; and (4) that there was *laches* in the assertion of the right and the seeking of the remedy by injunction.

2. INJUNCTION—*when should not be granted without notice.* Injunction should not be granted without the giving of notice of the application therefor unless it is made clearly and indubitably to appear from facts recited and verified that the rights of the com-

plainant will be unduly prejudiced unless the injunction is granted without notice.

Bill for specific performance. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. MCEWEN, Judge, presiding. Heard in this court at the March term, 1907. Reversed. Opinion filed July 1, 1907. Rehearing denied July 15, 1907.

**Statement by the Court.** The bill in this case is in the nature of one for specific performance and comes before us upon an appeal from an interlocutory order of injunction entered by the Superior Court, without notice. The parties will be here referred to by their titles in the court below.

It appears from the averments of the bill that complainant conducts a drug store and practices the profession of a medical man at 5900 Halsted street in a building owned by the defendant, and has been in the continuous occupancy of some part of such building since the month of May, 1892. That defendant leased the store of the building to complainant under an indenture of lease for a term of five years commencing May 1, 1902, at the whole term rental of $6,000, payable in monthly instalments of $100 each. That at the commencement of said term complainant installed a "drug store" and has operated the same profitably from that time until the time of filing the bill herein, May 1, 1907. That at his own expense, and at considerable cost, he put in electric fixtures and electric lights and an ornamental metal ceiling and a tile floor in the store. That thereafter and in September, 1902, about four months after taking possession of the store, complainant wishing to have the store and apartments occupied by him heated with steam and redecorated and generally put in better repair and condition, and some permanent improvements made, applied to the defendant and proposed to him that if he would grant an additional term of ten years beyond the five year existing grant, upon the same terms as to rent then in force, that complainant would put in a heating

plant, a new bath tub, fixtures in bath room, remodel bath room, repair and decorate the premises, put hard wood floors in certain rooms, and keep all the premises in repair during the lease then in force and the ten year period of extension, all at his own cost and expense, the same to constitute the consideration for a renewed ten year grant. That defendant accepted this proposition and agreed, in consideration of complainant making the improvements and repairs stated at his own cost and expense, to extend said term ten years, and that defendant "did extend the period of complainant's lease to said premises for ten years from and after May 1, 1907." That in pursuance of and reliance upon the agreement and undertaking of defendant to extend the lease, all the improvements, additions and repairs agreed to be made upon the premises were made and put in and paid for by complainant, and that upon demand for an additional ten year term lease defendant refused to make the same and repudiated the alleged agreement and denied its making. The bill prays that the agreement for a new lease may be specifically performed and carried into execution, and that defendant may be decreed to execute a new lease to the premises to complainant from May 1, 1907, to April 30, 1917, according to the terms of the agreement. Complainant offers to execute such a lease on his part, tenders first month's rent of new term, and prayed for and obtained without notice to defendant an injunction preserving the *status quo* until a hearing upon the merits.

WHEELER, SILBER & ISAACS, for appellant.

L. A. McDONALD and WILLIAM H. TATGE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

In the conclusion to which we have arrived we deem it inexpedient and unnecessary to tread the domain of

the merits of the cause made by the bill, if any appears. Our opinion will be restricted to a discussion and decision of the one question as to whether or not the injunction, in being issued without notice, was contrary to the statute and the construction put upon it by the courts.

The agreement for a new ten year term lease appears to have been made four years and eight months prior to the expiration of the term of the existing lease. No time is mentioned in the bill when complainant applied to defendant for the new grant, or when defendant repudiated the agreement therefor alleged by complainant; when and under what circumstances defendant threatened to forcibly evict complainant, or to whom the threat was made, does not appear. Neither does the bill disclose the source of information upon which complainant predicates his avowed belief of irreparable injury following upon a notice of an application for an injunctional order.

If complainant can maintain his alleged rights as averred in his bill, surely he would be in no danger of eviction at the hands of defendant within twenty-four hours, the necessary time between service of such a notice and an appearance before the court. Defendant was not financially irresponsible, for as the owner of 5900 Halsted street he was amply able to respond in damages which he might by such hasty and ill-advised conduct inflict upon complainant. Surely the alleged statutory fears of complainant, in view of known conditions, were without reason or common sense. We must assume, in the absence of any proof or contention to the contrary, that complainant some time previous to the filing of his bill and in the lifetime of the lease under which he occupied, knew of defendant's denial of his alleged agreement to make a new ten-year lease; and if in fact he did not so know until that late date, then he was so negligent in the assertion and protection of his own rights and interest that he cannot be permitted to rely upon such negligence as an excuse

sufficient to avoid the statutory requirement of giving notice of his application to the court for the exercise of its extraordinary power to grant an injunction. It is only in the most extreme peril, apparent from recited and sworn facts in demonstration thereof, and from which it is made clearly to appear to the court that in fact the rights of complainant will be unduly prejudiced, that an injunction should be granted without notice. How can it be conceived that at the very last moment complainant could be granted an injunction without notice in an attempt to enforce an agreement asserted by complainant to have existed for nearly five years, and which could not be legally effective or complete without the execution of a solemn instrument under seal? To so do would be to encourage and invite *laches,* which, on the contrary, equity not only does not encourage, but oftentimes discountenances to the extent of depriving a party of a substantial right which, but for such *laches,* it would lend its aid to maintain and enforce.

The fears possessed by complainant find lodgement in conclusions, not facts. What he fears is hidden. The fears concerning rights that may be prejudiced contemplated by the statute as necessary to authorize the issuance of a restraining order without notice, are such as may be inferred from facts stated in the bill or accompanying affidavits, and must arise from conclusions reasonably inferable from such stated facts. Complainant had ample time to contest his right to maintain the injunctional relief prayed by giving of the statutory notice a sufficient length of time prior to the expiration of his five-year lease, so that the chancellor before granting an injunction might have acted with a knowledge of the rights and the standing of the parties as measured by the law of the land. It is almost impossible to escape the natural inference to be drawn from the bill that complainant was incited, in making his application for an injunction, more from

a desire to procure an undue advantage over defendant than any fear grounded upon the facts within his knowledge.

This court has spoken many times in no uncertain voice in condemnation of the practice of granting an injunction without notice unless it is made clearly and indisputably to appear from facts recited and verified, that the rights of a complainant will be unduly prejudiced unless the same be granted without notice. No presumptions are to be indulged in favor of action without notice, but parties must, on facts stated and sworn to, bring themselves within the exception of the statute before being entitled to an injunction without notice. Failing so to do, an injunction granted will be held to be improvident and dissolved.

In this case if an application had been made for an injunction at any time prior to May 1, 1907, and notice thereof given, defendant would have been impotent to harm complainant or disturb his possession, however desirous he may have been to do so. Had complainant moved in the matter with any reasonable celerity, the whole controversy could have been decided in court before the expiration of the term of the existing lease. Even at the late day complainant made his application, if he had given notice, a temporary stay order could have been procured pending the hearing and decision of the motion for an injunction, which would have afforded him all the protection he needed.

The case at bar falls within the logic and reasoning of the many cases in which injunctional orders granted without notice have been reversed, among which we cite: Becker v. Defebaugh, 66 Ill. App. 504; Brough v. Schanzenbach, 59 Ill. App. 407; King v. Pardridge, 60 ibid. 475; Hovnanian v. Bedessern, 63 ibid. 353; Nusbaum v. Locke, 53 ibid. 242; Commerce Vault Co. v. Hurd, 73 ibid. 107; Board of Trade v. Riordan, 94 ibid. 298; Leiter v. Baude, 99 ibid. 64; Sprague v. Monarch Book Co., 105 ibid. 530.

The granting of an injunction without notice is to be discountenanced except in a proper case, where the statute has been strictly complied with, and as said in Chicago City Ry. Co. v. Montgomery Ward & Co., 76 Ill. App. 536, "The extraordinary remedy of injunction without notice should not be allowed except in extreme cases." The case at bar is emphatically no such case. Therefore the order of the Superior Court granting an injunction is reversed.

*Reversed.*