Felix Skarpinski et al., Appellees, v. Veterans of Foreign Wars of the United States, Defendant-Appellant. Amalgamated Trust and Savings Bank and Amalgamated Safe Deposit Company, Defendants.

Gen. No. 45,418.

Opinion filed May 8, 1951. Released for publication May 29, 1951.

CHARLES LEVITON, and JEROME H. LEVITON, of Chicago, for appellant.

ALBERT E. JENNER, JR., and PHILIP W. TONE, of Chicago, for appellees; JOHNSTON, THOMPSON, RAYMOND & MAYER, of Chicago, of counsel.

Per CURIAM.

Defendant Veterans of Foreign Wars of the United States is a corporation organized pursuant to an Act of Congress. Its purposes are stated in that Act to be fraternal, patriotic, historical and educational. It is national in scope and is required to maintain an agent for service of process in every state in the union. Its membership consists of veterans who have served honorably as officers or enlisted men in the military forces of the United States in foreign wars. It is the parent organization of the Cook County Council of Veterans of Foreign Wars of the United States. Plaintiffs, nine in number, are members of the Cook County Council, and sue both as individuals and on behalf of the Council. A dispute arose between the National Organization and the Cook County Council which after a hearing culminated in an order revoking the charter

of the Council on October 2, 1950. The complaint alleged in substance that the order was illegal; that the Cook County Council had not received a fair hearing; and that there was a denial of constitutional rights. Suit was filed on October 16, 1950, and on the following day without notice an injunction was issued enjoining defendant-appellant from taking any further action to enforce cancellation either by disciplinary action or interference with employment of individual plaintiffs, or from seizing or attempting to seize any funds or property of the Cook County Council or interfering with its operations. A motion to vacate the injunction was denied December 11, 1950 and from this order defendant-appellant appeals.

█ The first and most important point made by defendant-appellant is that the injunction should not have been issued without notice. Other points are made with respect to the merits of the controversy and the mandatory character of some of the provisions of the order. However, we rest our decision on the error of the court in issuing an injunction without notice. The facts set forth are not adequate to sustain such an order. In arriving at this conclusion, we have taken into consideration the supporting affidavits.

Concerning an order appointing a receiver without notice, the court in the case of *Nusbaum v. Locke,* 53 Ill. App. 242, stated that notice of application must be given unless it is clearly necessary to act without notice. The decision was rendered per curiam, the court evidently desiring, as in this case, to emphasize the fact that the opinion embodied the definitive convictions of each member of the court. Since that time almost every opinion of this court which has had occasion to take notice of this question, has emphasized the need for great caution in the granting of such orders, whether for receivers or for injunction. *Brin v. Craig,* 135 Ill. App. 301; *Crown Building Corporation v. Monroe Amusement Corp.,* 326 Ill. App. 430;

*Koelling v. Foster*, 150 Ill. App. 130, 134; *Kessie v. Talcott*, 305 Ill. App. 627; *Sprague v. Monarch Book Co.*, 105 Ill. App. 530; *Chicago City Ry. Co. v. Montgomery Ward & Co.*, 76 Ill. App. 536. This position of the courts has the final confirmation of statutory enactment, Ill. Rev. Stat. (1949) ch. 69, sec. 3. [Jones Ill. Stats. Ann. 109.351].

Even when granted upon a full and final hearing, injunctions are considered extraordinary remedies. They are more than extraordinary when granted after notice for a temporary period without issue having been joined and a hearing had. How extraordinary then must be the circumstances under which they should be granted without notice to the opposing party. In the most primitive concepts of justice, one of the fundamental requisites for the exercise of judicial authority over the person or property of another is notice. The exceptions to this rule are rare, indeed. They embrace cases where by a stroke of the pen, a movement of the hand, or a tour de force executed overnight the defendant intends to and can destroy the substance of the litigation and thus defeat the power of the court to do justice. Caution and circumspection must be the watchwords to guide the court's action and any doubts as to its wisdom must be resolved against the action. Only where these standards are meticulously observed will such orders survive review, for when an injunction is issued without notice in a case where notice should have been given, this court will reverse the order upon that ground without regard to any other question. This has been the law as laid down in decisions of this court for more than half a century.

We do not see anything in the facts presented that approaches the urgency which would require such drastic action against a corporation national in scope, presumed to be patriotic and fraternal in purpose, and

274

having a representative for service in every state of the union. It appears from the record that plaintiff knew who was defendant's attorney and telephone communication with him should have been easy and practicable. Even a telephone call from the courtroom to defendant or counsel can produce an appearance within a few minutes. While we do not suggest this as a substitute for formal notice, it is at least a desirable alternative to no notice at all. All the judges of this court have sat in chancery and know that when such informal notice is given, it is followed by appearance and almost invariably by a commitment to preserve the status quo pending a hearing upon the motion. Court-martial proceedings were feared, but certainly these were not contemplated on the night of October 16, 1950, before the opening of court the following morning. The threat alleged with respect to interference with the employment of plaintiffs by officers of defendant-appellant had not taken any tangible form and would have been an actionable wrong. It is not contended that the bank or safety deposit company would have turned over any moneys or property to defendant-appellant before the court had an opportunity to hear the matter upon notice. So far as appears, the last specific overt act took place October 6, 1950, eleven days before the issuance of the injunction. Some show of emergency is attempted to be made on the ground that the Cook County Council had certain obligations which it could not meet, but none of these were of such urgency as to have had a disastrous result before the court could hear the matter upon notice.

■■ In the last analysis, to test the necessity for the issuance of an injunction without notice, the court must ask whether in the minutes or hours required to procure a defendant's appearance, defendant could and would do that which would seriously obstruct the court's power to deal justly and effectively with the

275

issue in dispute. The rules of the court permit the court to enlarge or reduce the time of notice prescribed by the rules, but even if this were not so, the court would have that power as an alternative to issuing an injunction without notice.

Order reversed and cause remanded with directions to vacate the order of October 17, 1950, granting a temporary injunction.

*Order reversed and cause remanded.*