**Streamwood Home Builders, Inc., Plaintiff-Appellee, v. Pauline Brolin, et al., Defendants-Appellants.**

**Gen. No. 47,952.**

First District, First Division.
March 14, 1960.
Rehearing denied April 7, 1960.
Released for publication April 8, 1960.

F. Raymond Marks, Jr. and Willard J. Lassers, of Chicago (Heineman, Marks, Simons, and Houghteling, of counsel) for defendants-appellants.

Charles J. O'Laughlin and John C. Tucker, of Chicago (Thompson, Raymond, Mayer, Jenner, and Bloomstein, of counsel) for plaintiff-appellee.

PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

This is an interlocutory appeal by the defendants from an order denying their motion to dissolve a temporary injunction. The single question to be determined is the propriety of issuing the injunction without notice.

The motion for the restraining order was accompanied by the complaint and three supporting affidavits. The complaint stated that the plaintiff was a subdivider and a builder of homes in the Village of Streamwood, Cook County. It charged that the defendants, all residents of the village, had entered into a conspiracy in August 1959, to coerce the plaintiff to build schools in the village, which the plaintiff was under no legal obligation to do; that on two Sundays, September 13th and 20th, 1959, the defendants, in furtherance of the conspiracy, had prevented the sale of the homes by parading around the sales area, by invading the plaintiff's office and model homes, and by interrupting conversations between salesmen and prospective purchasers. It was further alleged that the defendants had threatened to repeat the demonstrations on Saturday and Sunday, September 26th and 27th.

One affidavit was by the plaintiff's supervisor of sales. He stated he had received information Wednesday evening, September 23rd, that the defendants would cause similar disturbances the following weekend. He also swore that $18,000 had been spent in advertising the homes for sale on the same weekend.

Another affidavit was by the general counsel for the plaintiff. He said that he had been retained to prosecute the complaint on September 24th; that he and an associate worked on the pleadings until 10:30 Thursday night and, with the aid of two more associates, continued the work throughout the next day until 3:30 p. m.

The suit was filed thereafter, late in the afternoon of Friday, September 25, 1959, and was assigned to the chancellor. He enjoined the defendants from instigating or participating in activities which would interfere with the plaintiff's sales efforts. His order further stated: ". . . this injunction should issue without notice it appearing from the record that in view of the imminence of the threat that there was insufficient time to give notice."

The latter part of the order spotlights the problem confronting us. The facts alleged in the pleadings made out an excellent prima facie case for an injunction, and for the issuance of an injunction prior to the threatened repetition of the defendants' demonstration, but no facts were pleaded which showed that the plaintiff would be prejudiced by informing the defendants of the motion; nothing was said about the waiver of notice, and there was no prayer for such relief. Under these circumstances should notice have been waived? Should notice have been given during the preparation of the case in anticipation of the subsequent shortage of time?

The defendants maintain that notice should and could have been given because the plaintiff, according to its own affidavits, knew for at least two days that an injunction was to be requested; that its sole objective was to obtain the writ before Saturday, and that it therefore knew the application would be made sometime on Friday. They point out that the complaint shows that the plaintiff has an office, staffed with

42

employees, in the village where the defendants reside, and that a telephone call to this office would have resulted in the personnel alerting at least some of the defendants. And they add that, under our decisions, all that was required was some kind of notice, either oral or written.

The plaintiff explains that it had no intention of seeking an injunction without notice and for that reason the subject was not mentioned in its pleadings, but when the pleadings were completed, there remained only a few minutes before the end of the afternoon on the last day of court before the impending act sought to be enjoined. It takes the position that notice of the time and place of its application could not be given until the case was filed and assigned to a particular judge, and that when this was done it was too late to inform the defendants who lived at the extreme edge of the county, many miles from the court house.

■ ■ An injunction is an extraordinary remedy; one without notice is considered most drastic and should be granted only under extreme circumstances. Sprague v. Monarch Book Co., 105 Ill. App. 530; Brin v. Craig, 135 Ill. App. 301; Crown Bldg. Corp. v. Monroe Amusement Corp., 326 Ill. App. 430. The circumstances countenanced by the courts have been in very restricted areas, such as where the facts of the case, or the history of the parties, disclosed that the giving of notice would result in accelerating the very act sought to be enjoined, or where the act to be enjoined was either taking place or would be undertaken or completed in the time required for notice. A. Daigger & Co. v. Kraft, 281 Ill. App. 548; Mitchell v. Mitchell, 10 Ill.App.2d 437; Atkinson Trust & Sav. Bank v. DeRoo, 332 Ill.App.251; 21 I.L.P., Injunctions, sec. 123, et seq.

■ Notice to an adversary is elemental in our system of justice. Our courts of review have insisted

upon chancery courts scrupulously observing the fundamental right of a party to be informed of the injunction proposed against him so that he may be present, if he wishes, to defend himself. Skarpinski v. Veterans of Foreign Wars of United States, 343 Ill. App. 271; Goldberg v. Laughlin, 137 Ill. App. 283. It has been held some notice is better than none, and if a complainant is unable to comply with the court rules in reference to giving notice and serving copies of the pertinent pleadings (Uniform Rules of the Circuit Courts of Illinois, sec. 302.1, ch. 110, Ill. Rev. Stat. 1959) he can show his good faith by giving some sort of notice to the opposite party. In Skarpinski v. Veterans of Foreign Wars, supra, an injunction without notice was issued the day after the complaint was filed. This court stated that there was no genuine emergency shown by the complaint and added:

"It appears from the record that plaintiff knew who was defendant's attorney and telephone communication with him should have been easy and practicable. Even a telephone call from the courtroom to defendant or counsel can produce an appearance within a few minutes. While we do not suggest this as a substitute for formal notice, it is at least a desirable alternative to no notice at all."

We must distinguish between a case, such as Skarpinski, where the defendant or his attorney is readily accessible, and the instant case where the defendants had no centrally located address or no known attorney. A late notice in this case would have been futile; it is reasonable to suppose that none of the defendants could have responded in the brief interval between the completion of the necessary documents and the adjournment of court for the weekend. The only satisfactory notice, under the prevailing circumstances, would have been one served several hours before the filing of the suit. The defendants say this should

have been done, and this is the heart of their argument. It seems to us, if this argument were carried to its logical conclusion, a plaintiff upon arriving at his decision to seek an injunction, or his attorney upon being consulted for this purpose, would have to inform the defendant that an injunction was contemplated, and that on some future day, at some time as yet undetermined, they would appear before some chancellor in either the Circuit or Superior Court. They would have to do this to safeguard themselves in the event that later there was inadequate time for a better notice. What other defense would they have to a charge that they could have given an earlier notice if they had sincerely tried?

No case has been called to our attention where it has been suggested that a notice prior to instituting litigation is either required or is advisable. A somewhat analogous contention was rejected in O'Beirne v. City of Elgin, 187 Ill. App. 581, where an injunction was granted without notice, under a statute substantially the same as the present one, restraining the city from considering bids and making contracts for a municipal lighting plant. The bids were to be opened at 2 p. m. on the day the injunction was issued. The bonds for the plant had been approved by the voters months earlier, and it was urged that the complaint could have been filed in ample time for notice to have been given. The court said:

"It is argued that appellee might have filed his bill earlier and thus had time to give notice of his application. This may be true, but we know of no law that forbids the issuing of an injunction without notice on the ground that the complainant might have commenced his proceeding earlier and given notice. We are aware of no requirement that it should appear to the court granting the temporary injunction, not only that damage would result if the injunction is not issued

without notice, but also that the complainant is guilty of no negligence in failing to file his bill at an earlier period."

A further result would flow from formulating a rule along the line of the defendants' argument. Notice could be excused only in those cases where the giving of notice might bring on an act sought to be enjoined, such as a defendant leaving the state, withdrawing or spending funds and the like. In other cases there would be no reason for dispensing with notice. No emergency no matter how urgent, no impending damage no matter how great, would justify the injunction because it would be a rare case indeed, under our practice of informal notification, where some notice could not be given. Such a rule would be in contravention of the statute which imposes no such limitation. The statute says that an injunction may issue without notice if it appears from the complaint or the affidavit that "the rights of the plaintiff will be unduly prejudiced if the injunction is not issued immediately or without notice." Chapter 69, sec. 3, Ill. Rev. Stat. 1959.

The chancellor was faced with three alternatives: (1) he could have refused the injunction; (2) he could have compelled notice and continued the hearing for this purpose until a later hour on Friday or an early hour on Saturday, or (3) he could have issued the injunction. Let us examine each of these to see if he abused the discretion which was his.

■ (1) If he refused the injunction he would be risking grave injury to the plaintiff. Unlike the Skarpinski case where this court found that "The threat alleged . . . had not taken tangible form . . . ," here the defendants had definitely threatened to repeat, within the next 24 hours, the demonstration which had so greatly damaged the plaintiff just five days before. And again, unlike the Skarpinski case, where this court said that the acts which were feared ". . . were

46

not contemplated . . . before the opening of court the following morning. . . . ," here the acts were indeed contemplated and reasonably to be expected before the opening of court on the next court day, which was the following Monday morning. (2) It would have been the best solution if the chancellor had been able to postpone the hearing until a later hour so that the defendants could have had the opportunity of appearing. But we cannot criticise him for not doing so. There was no obligation upon him to hold court on Friday night or on Saturday, although judges often do. We do not know if it would have been possible for him to have done so; he alone knows what his commitments or plans were for those times. (3) The chancellor knew when he considered the application that there was inadequate time for future notice, and he had before him an affidavit by an officer of his court which established that there had been no time for prior notice and no purposeful procrastination just to create the appearance of urgency. The factual allegations of the complaint showed the necessity for an injunction; and, although there was no prayer for waiver of notice nor any averment that the giving of notice would be prejudicial, these were unnecessary since the court could conclude from the facts which were alleged, that the plaintiff would suffer irreparable and substantial injury if the injunction were delayed until notice could be given. Sprague v. Monarch Book Co., supra. Issuing the injunction apparently would not injure the defendants who, according to the sworn complaint, had been committing several illegal acts. Certainly no harm could come their way comparable to that confronting the plaintiff if the injunction were refused.

■ ■ In choosing the third alternative the chancellor was well within his discretion. It was his responsibility to determine if the application had been presented in good faith or if it had been delayed until

47

the eleventh hour for the purpose of simulating an emergency. Where the exigency is genuine and not feigned, the danger imminent and not remote, the injury real and not imaginary, an injunction may issue without notice. Every case must rest upon its own facts, and if the chancellor's discretion is reasonably exercised it will not be interfered with by a court of review.

The order of the Circuit Court is affirmed.

Affirmed.

McCORMICK, J., concurs.

SCHWARTZ, J., dissenting:

The issues are so fully and fairly set forth in the opinion of the court, it is unnecessary for me to supplement them in any way. I disagree with my colleagues on the vital question in the case. The court refers to Skarpinski v. Veterans of Foreign Wars of United States, 343 Ill. App. 271, 98 N.E.2d 858, where it was said that a telephone call from the courtroom can produce an appearance, and while that was not suggested as a substitute for formal notice, it was at least a desirable alternative to no notice at all. I construe this to mean that if precise notice of time and place could not be given, the next best method should be used to get notice to an adversary of the *imminent* application for an injunction. In other words, I would answer in the affirmative the question propounded by the court—should notice have been given during the preparation of the case in anticipation of the subsequent shortage of time?

In the instant case, plaintiff knew that the acts it was seeking to enjoin had occurred on prior occasions. Accepting as true the averments of the complaint, that plaintiff was not warned of the possibility of a renewal until the Wednesday preceding the Friday when the

complaint was filed, and then for the first time thought of procuring an injunction, the thing that should have occurred to plaintiff or its lawyers at once was how to get some form of notice to defendants. At some point in its preparation of the case plaintiff should have recognized its inability to give the customary formal notice and have made bona fide efforts by telephone or otherwise for the next best alternative. I cannot agree with my colleagues that plaintiff had the right to wait until the complaint was filed and the suit assigned. That would leave it in the hands of plaintiff to create the emergency. As a practical matter, fixing a time and place for meeting and going from there to the assigned court is not uncommon. It would have been easy and simple for plaintiff to get notice to defendants because it had an office in the town where defendants lived.

True, as stated in the opinion of the court, the statute provides that an injunction may issue without notice where the rights of the plaintiff will be unduly prejudiced if an injunction is not issued immediately or without notice. But that does not command the issuance of an injunction. It merely provides the basic generalized requirements without which an injunction may *not* issue without notice. The discretion of the court still is to be invoked. The temptation to proceed without an adversary is very great when an emergency such as the one here involved arises. Therefore, not only should it be incumbent upon lawyers to make an effort to get some kind of notice to defendants, but in my opinion it is an abuse of discretion for the court not to require it, save in such exceptional instances as are referred to in the Skarpinski and other cases cited in the opinion of the court.

The case of O'Beirne v. City of Elgin, 187 Ill. App. 581, appears to support the conclusions of my colleagues. That case arose in 1914 and involved an in-

49

junction restraining a special election to determine the acquisition of a public utility by the City of Elgin—a municipal ownership question which in those days aroused bitter controversy. No notice was given to any official of the City of Elgin. With respect to the argument that the complainant might have filed his bill earlier and thus have had time to give notice of his application, the court said it knew of no law which forbade the issuance of an injunction without notice, on the ground that the complainant may have commenced his proceeding earlier and given notice. It seems to me the court overlooked the fact that the matter was addressed to the discretion of the chancellor, and that he should have taken into account the size of the city, the ease with which it could have been notified, and the fact that the complainant might have delayed the filing of suit in order to fit the cause within the requirements of an emergency. A court's failure to do so might be an abuse of discretion, as I think it was in the instant case.

So far as I can find, only twice has the O'Beirne case been cited, and then on the proposition that the irregularity of failure to give notice was waived by the filing of a motion to dissolve, which was also a ground on which the case was decided (Schaumburg v. Lindsay, 329 Ill. App. 190, 67 N.E.2d 409; Decker v. West, 273 Ill. App. 532). It is out of keeping with the many decisions which have been handed down since then and which reveal the concern of the courts for the abuse of proceedings for the issuance of injunctions without notice. The courts obviously came to realize the nature of the abuse and in no uncertain terms frequently expressed their disapproval. I feel that in the instant case, adequate steps were not taken to give notice to defendants.

I must register my dissent.