Sunset Hills Homeowners Association, Plaintiff-Appellee, v. Richard A. Karel and York Homes, Inc., a Corporation, Defendants-Appellants.

Gen. No. 48,920.

First District, First Division.
January 18, 1963.
Rehearing denied February 7, 1963.

478

John Demling and Harold I. Levine, of Chicago, for appellants.

Short & Cervelli, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an interlocutory appeal from a Circuit Court order granting a temporary injunction without notice and without bond restraining the defendants from continuing with the construction of a residential building.

The plaintiff, Sunset Hills Homeowners Association, brought suit on July 19, 1962, against defendants, alleging in its verified complaint that it is a duly chartered nonprofit corporation composed of homeowners in Braniger's Medinah Sunset Hills subdivision and was formed to promote the welfare and interests of property owners in the subdivision and to enforce building and other restrictions pertaining to property in the subdivision; that the plat to the subdivision is recorded (citing the book and page number) and that all lots in the subdivision are subject to building restrictions which were included in the deeds given by the subdivider, which restrictions are covenants running with the land, designed to insure conformance to a general building plan in order to make the property a highly desirable residential area; that the association succeeded to the rights of the subdivider to enforce reasonable restrictions and at a meeting held April 1, 1959, the association adopted a Building Code

479

(a copy of which was attached to the complaint), which provides, in part, as follows:

II. Space Requirements.

A. Minimum area as specified in recorded plat is to be 1100 square feet with basement, and 1200 square feet without basement. Square feet is to be measured from *inside* of exterior walls.

The complaint then alleged that defendant Karel is the owner of lot 159 in the subdivision and that defendant York Homes, under a contract with Karel, and without a permit from the committee (as required by the Building Code), had started construction of a building with only 1065 square feet of floor space in violation of the code provision quoted above; that defendants have, despite notice, continued construction to the great harm of plaintiffs; that plaintiffs are without an adequate remedy at law.

Plaintiffs then requested an injunction be granted enjoining defendants from continuing construction. Waiver of notice was requested on the grounds that an emergency existed and that if notice were given so much of the construction would be completed that it would become economically unfeasible to require defendant to comply with the Building Code. Plaintiffs also stated they were without funds and requested issuance of the injunction without bond.

In an ex parte hearing on July 23, 1962, an order was entered granting the temporary injunction as requested in the complaint and a copy of the injunction was served on defendant York the same day. Counsel for defendant, Karel, filed his appearance on August 1, 1962, and served notice that on August 3, 1962, he would move to dissolve the injunction for the following reasons:

1. The complaint failed to state a cause of action and failed to state sufficient grounds to justify granting an injunction;
2. The restrictions alleged in the deeds from the subdivider were not made part of the complaint nor were any of the restrictions alleged to have been violated;
3. The complaint failed to state what the rights of the subdivider were, how plaintiff association had succeeded to those rights or that defendants had notice of the alleged succession to those rights;
4. The complaint failed to allege that the terms of the privately adopted Building Code were ever made a matter of public record or that defendants were ever put on notice;
5. The complaint failed to recite facts wherein a duty evolved upon defendant to seek a permit from plaintiff association;
6. The allegations that an emergency existed failed to state any facts entitling plaintiff to relief requested;
7. The allegation that plaintiff association is without funds to provide for a bond indicates that the association is without funds to answer in a suit for damages.

Whereupon defendant Karel prayed that the temporary injunction be dissolved.

In its answer, filed on August 8, 1962, defendant York admitted that all lots in the subdivision were subject to recorded restrictions, but denied that said restrictions give the plaintiff the power to promulgate and enforce any building restrictions of the type sought to be enforced here. York further stated it had not violated any of the subdivision restrictions. Defend-

ant York's answer further stated that plaintiff did not have the right to adopt a Building Code or to issue building permits in conflict with the Building Code of Cook County; that the Building Code is arbitrary, unreasonable, and vague; that all square footage in buildings is measured from the outside of exterior walls and not inside; that the building permit obtained from the Cook County Zoning Board (attached as Exhibit A) showed the area of the premises to be 1,184 square feet; that plaintiff had approved the plans and specifications for the building as they now stand and is estopped from claiming the alleged violation. Attached to the answer was the affidavit of James Riley who was assigned to the construction of the Karel residence by defendant York. In his affidavit Riley stated that on July 9, 1962, a person representing himself to be a "Building Inspector" requested the construction be stopped because plaintiff association had not approved the plans. Riley said he contacted a member of the association (a Mrs. Thune) and delivered to her a set of plans for the Karel home. He stated that on July 10th, he was told by Mrs. Thune that the foundation would have to be eleven square feet larger. Riley said this change in plans was made and he was told the plans would be approved the next day. However, despite repeated requests, Riley said he never received the approval.

On August 9th an order was entered reciting that the matter came on for hearing on motion of both defendants to dissolve the injunction and that the Court heard arguments of counsel. The order then recited that plaintiff was granted four days in which to furnish an injunction bond in the amount of $10,000. The Court further ordered that in the absence of the bond the injunction would be dissolved and defendants would be granted leave to file their suggestions of damages. The bond was filed and approved and on August 13th an

482

order was entered continuing the matter to September 11th. On the same date, another order was entered reciting that on motion of defendant Karel an appeal was being taken by Karel from the order denying his motion to dissolve the injunction. Appeal bond was set and filed.

Section 3 of the Injunctions Act (Ill Rev Stats 1961, c 69, § 3) provides:

> No court or judge shall grant an injunction without previous notice of the time and place of the application having been given to the defendants to be affected thereby, or such of them as can conveniently be served, unless it appears, from the complaint or affidavit accompanying the same, that the rights of the plaintiff will be unduly prejudiced if the injunction is not issued immediately or without notice.

Section 9 of the same act provides that, ". . . bond need not be required when, for good cause shown, the court or judge is of the opinion that the injunction ought to be granted without bond."

■ Defendants first contend that the fact that plaintiff filed his complaint on a Thursday, but did not present its motion until the following Monday, negates the allegation that an emergency existed and that it would be unduly prejudiced if the injunction would not be issued without notice. We do not agree. In Skarpinski v. Veterans of Foreign Wars of United States, 343 Ill App 271, 98 NE2d 858, most strongly relied upon by defendants, where a receiver was appointed without notice, the court reversed the order, stating that it appeared that the act complained of took place eleven days before the issuance of the injunction. In the case at bar the motion was filed on Thursday and the ex parte hearing was held on the following Monday. Since we cannot include the Sat-

483

urday and Sunday dates when the court was not in session, plaintiff presented his motion on the second court date following the filing of the complaint. In our opinion, this was not unreasonable and the chancellor's issuance of the injunction without notice in such a circumstance was not an abuse of discretion.

■ ■ We agree with the language in Skarpinski that injunctions are considered extraordinary remedies even when granted upon a full and final hearing and are more extraordinary when granted without notice and without bond. In Skarpinski the court stated the situations which would justify granting an injunction without notice.

> They embrace cases where by a stroke of the pen, a movement of the hand, or a tour de force executed overnight the defendant intends to and can destroy the substance of the litigation and thus defeat the power of the court to do justice. 343 Ill App at p 274, 98 NE2d at p 859.

The court then pointed out that, "[t]he threat alleged [in the complaint] . . . had not taken any tangible form and would [not] have been an actionable wrong." 343 Ill App at p 275, 98 NE2d at p 860. Here, unlike the situation in Skarpinski, the threat to plaintiff's rights was real and imminent. The house was in process of being constructed. The complaint sufficiently alleged that if notice were given and a hearing held, construction on the house would have continued to a point where it would have been economically unfeasible to require defendants to conform to the Building Code adopted by plaintiff. In such a situation we cannot say the Chancellor erred in granting the injunction without notice. Weingart v. Weingart, 23 Ill App2d 154, 161 NE2d 714.

■ Defendants' next contention is that the complaint is insufficient in that the allegations of fact do

not support a temporary injunction. It is argued that the complaint lacks allegations that the Building Code referred to in the complaint was of record or that defendant Karel had notice of the code before construction was started. Defendants also charge there is nothing in the record to indicate what the recorded plat contains or what the deed to Karel contained. Finally, the complaint fails to show that the Building Code adopted by the association was identical to the recorded restrictions.

The record reveals, however, that the answer of York Homes was filed before the motions of both defendants to dissolve the injunction were heard, and presumably was considered by the Chancellor when the matter was argued. This answer admitted that all the lots in the subdivision were subject to the recorded restrictions, but denied the restrictions were violated. This answer admitted that notice was received from the association and affirmatively alleged that defendants had made the changes requested by plaintiff, but that plaintiff had failed to approve the plans although it had promised to do so. York further denied that square footage is measured from inside of the exterior walls.

The record is clear that no motion was made to strike the complaint as being insufficient. A motion to dissolve a temporary injunction is not necessarily a hearing on the merits. The primary purpose of a temporary injunction is to preserve the status quo for further proceedings, and unless the reviewing court finds that the Chancellor has abused his discretion, the order will not be set aside. Bowman Shoe Co. v. Bowman, 21 Ill App2d 423, 158 NE2d 112; Bernard Bros., Inc. v. Deibler, 326 Ill App 538, 62 NE2d 248. Applications for temporary injunctions are usually prepared under pressure and some discretion should be allowed the Chancellor. The general rule is that restrictions

may be imposed upon property by noting them on a plat which is later recorded. Davis v. Huguenor, 408 Ill 468, 97 NE2d 295. Plats of subdivisions are, by Statute, required to be recorded and are notice to the world.

Without again reviewing the allegations in the complaint, we find that the Chancellor did not abuse his discretion in granting a temporary injunction in the instant case. Whether the defendant Karel is bound by the restrictions of the plat and whether the restrictions were actually violated and whether plaintiff is entitled to enforce the restrictions are matters for proof. It is sufficient in this situation that a temporary injunction be granted to preserve the status quo until these matters are proved.

Defendants final contention is that the Chancellor erred in originally granting the injunction without bond. Both the waiving of bond in the first instance to a nonprofit Homeowners' Association and the requiring of a bond after a hearing were, we believe, the exercise of sound discretion by the Chancellor. See Ortscheid v. Siegman, 331 Ill App 13, 72 NE2d 353.

Therefore, without expressing any opinion as to the merits, we hold that, upon the facts and circumstances in the record, the Chancellor did not abuse his discretion in entering the orders complained of.

The order of the Circuit Court granting the temporary injunction is affirmed.

Affirmed.

MURPHY, J., concurs.

ENGLISH, J., dissenting:

I must dissent, because, in my opinion, the complaint in this case does not state a cause of action. The rules

for reviewing the exercise of a chancellor's discretion do not come into play if, as a matter of law, the complaint itself is deficient.

In Malnick v. Rosenthal, 313 Ill App 249, this court said at pages 254, 295, 39 NE2d 767:

> It is fundamental that to entitle a plaintiff to relief by way of temporary injunction, his complaint must allege facts which prima facie give him the right to the relief prayed for on a final hearing.
>
> . . . . . .
>
> Since plaintiffs' complaint did not make out a prima facie case for the final relief they sought, they were not entitled to a temporary injunction with or without notice. In this view of the record it becomes unnecessary to consider other points raised on this appeal.

And in reversing a temporary injunction order in Callahan v. Holsman, 351 Ill App 1, 113 NE2d 483, Mr. Justice Schwartz stated at page 6:

> . . . appellants urge that the complaint does not state a prima facie case entitling plaintiffs to injunctive relief against them. It is essential that a complaint should make a prima facie case for final relief by alleging facts which, if proved and not controverted, will entitle complainant to the relief prayed for.

See also: Baird v. Community High School Dist. No. 168, 304 Ill 526, 529, 136 NE 671; Peoples Gas Light & Coke Co. v. Cook Lumber Terminal Co., 256 Ill App 357, 361; Bowman Shoe Co. v. Bowman, 21 Ill App2d 423, 440, 158 NE2d 112 (2d Dist); Schuler v. Wolf, 372 Ill 386, 389, 24 NE2d 162; J. H. Walters & Co. v. Can-

ham Sheet Metal Corp., 8 Ill App2d 121, 128, 130 NE2d 675 (4th Dist); Clayton v. Hubbard, 33 Ill App2d 439, 441, 179 NE2d 845; Jones v. City of Chicago, 348 Ill App 310, 313, 108 NE2d 802.

The majority's opinion points out that "no motion was made to strike the complaint as being insufficient." The only inferences I can draw from this statement are that, somehow or other, the defendant property owners (the Karels) waived their right to question the sufficiency of the complaint, or are estopped from doing so. Neither inference is sound.

The Karels were not served with summons, notice or injunction writ. How they learned of the injunction does not appear, but it is clear that they were not yet required to file any pleading and had not done so. (Supreme Court Rule 8.) Their first move, promptly taken, was to petition the court to vacate the injunction, and in that petition the first and foremost point raised was that the complaint failed to state a cause of action.

The necessity for a sufficient complaint is so basic that even if the Karels had filed an answer, as the contractor did, they would not have been prevented from asserting the insufficiency of the complaint on their motion to dissolve the injunction. In reversing a temporary injunction, this court said in the often-cited case of Biehn v. Tess, 340 Ill App 140, at page 144, 91 NE2d 160.

> The sole issue on this appeal is whether plaintiff is entitled to any injunctive relief. This of necessity brings into question the sufficiency of the complaint. There can be no doubt that if plaintiff did not have an equitable right to an injunction, that the order therefor was improper. In a proper case a court of equity will grant a temporary injunc-

488

tion to preserve and hold in status quo the rights of the parties until the cause can be disposed of on its merits. However, if it appears from the face of the complaint that there is no equity in it and no sufficient grounds are disclosed therein why the court should interfere, it is error to grant a temporary injunction. . . . The instant appeal is from the order granting the temporary injunction. The fact that in the same order defendants' motion to dismiss the complaint was overruled and that they elected to answer rather than to stand on their motion, would not justify the order for a temporary injunction if the complaint in fact failed to state a case for equitable relief. If the rule were as plaintiff contends, a court could grant a temporary injunction though the complaint stated no ground for equitable relief.

I, therefore, consider it important for this court to examine the complaint to determine its legal sufficiency.

Three building restrictions are referred to in the complaint. It is alleged, first, that the recorded plat of subdivision contained restrictions, but their terms are not set forth and there is no allegation that these plat restrictions were violated.

Next it is alleged that the deeds from the subdivider to the lot purchasers contained restrictions, but their terms are not set forth and there is no allegation that these deed restrictions were violated.

Finally, it is alleged that in 1959 plaintiff adopted a "Building Code" containing a minimum area restriction, the terms of which are set forth in the complaint (and are quoted in the majority opinion), the pertinent parts requiring a minimum area of 1100 square feet, "to be measured from *inside* of exterior walls." This

489

is the only restriction which the complaint even attempts to allege was violated. That allegation is that defendants have started construction of a building and that "the foundation of said building is only 1065 square feet." *

It would be reasonable to assume from a quick reading of the complaint as it relates to the three restrictions I have outlined, that all three restrictions are the same. But they are not. In this I think plaintiff took advantage of the chancellor, and I am certain that it sought to take advantage of this court in the same way. Because in plaintiff's brief it has stated: (1) that the recorded plat "contains the building restrictions sought to be enforced"; (2) that the deeds "contain the same restrictions"; (3) that plaintiff "adopted the same restrictions"; and that plaintiff's Building Code "repeats such restrictions and incorporates the recorded plat." Yet in open court at oral argument it was conceded by counsel for plaintiff that while the plat and deed restrictions were the same, the "Building Code" restrictions were different; that in the "Building Code" there was added for the first time the restrictive concept of measurement from "inside" of the exterior walls.

What is the significance of these misleading allegations in the complaint, and these untrue statements in the brief? Just this: the defendants had notice of the restrictions in the deed and had constructive notice of the restrictions in the recorded plat, but the complaint does not allege that plaintiff's "Building Code" was ever made a matter of public record, and it does not allege that defendants were given notice of the terms of its restrictions. And these latter restrictions

---

* The term, "floor space," used by the majority, is not found in the complaint, and constitutes, in my opinion, an unjustified determination of the meaning of the quoted words of the complaint.

are the only ones defendants are charged with having violated. Indeed, the contractor's verified answer states flatly that there was compliance with the plat and deed restrictions, and, as mentioned, the complaint contains no contrary allegation.

In furtherance of its course of deception, a part of plaintiff's brief is devoted to arguing the proposition that defendants are to be considered as having had constructive notice of the restrictions contained in the recorded plat or deed. This proposition is certainly sound, but entirely beside the point under the circumstances. Also irrelevant, in my opinion, is the majority's statement, with citation of authority, that a recorded plat is "notice to the world." Further, I disagree with the majority opinion's ensuing conclusion that the question of whether or not defendants are bound by the restrictions of the plat is a matter for proof. They are so bound, as a matter of law and without any proof, but that principle is determinative of nothing whatsoever in this case.

The one restriction which the complaint asks the court to enforce is the one of which defendants are not alleged to have had notice. Thus, the complaint is fatally defective, because notice is an indispensable element in the enforcement of restrictive covenants. As stated in McGovern v. Brown, 317 Ill 73, at page 79, 147 NE 664:

> The second question argued is whether or not defendants had actual or constructive notice of the restriction in favor of the other lot owners when they purchased their lots. The general rule is, that if a subsequent purchaser acquires a title to a lot in a restricted area of this character, either by conveyance from the original grantee or by mesne conveyance from him, without notice, either actual or constructive, of the general plan of the

491

buildings or occupation which imposes a building line restriction, the restriction cannot be enforced against him.

In Reis v. Bixhorn, 271 Ill App 279, the court reversed an injunction issued to restrain violation of a restriction contained in an unrecorded deed. In remanding with instructions to dismiss for want of equity, the court said at page 282:

> Appellees had the burden of proving that appellants, at the time they purchased the premises in question, had knowledge, either actual or constructive, of the restriction in the prior deed. The evidence fails to establish such facts. Without such proof, an essential element of appellees' case was lacking, and they were not entitled to the relief sought.

There is one oblique reference to notice in the complaint. It is to the effect that defendants started construction, and that "despite notice, continue said construction." This clause is an inadequate allegation that there was a proper communication to defendants of the full terms of the "Building Code," but, in any event, it appears that whatever the "notice" was, it came too late to be of any effect. The contractor's affidavit, consistent with this allegation of the complaint, makes it clear that the "notice" from plaintiff was a request to stop construction after it had begun. This, of course, is too late, since, as indicated by the opinions above, the notice must be prior to acquisition of title. Any restriction of this character sought to be imposed subsequent to purchase would be so grossly unfair that it could not be countenanced by a court of equity. Under the circumstances, this fatal defect which I find in the complaint could not be cured by amendment.

Even if the "Building Code" restrictions were held to be applicable to defendants' lot, I do not believe that the complaint alleges a violation. The only minimum established is that of square feet "inside of *exterior walls.*" The violation, on the other hand, is alleged to consist of having inadequate space within the *foundation.* The exterior walls of buildings frequently enclose larger space than their foundations. The Inland Steel Building in Chicago and the new gymnasium of the University of Illinois are examples, along with thousands of residences and other buildings seen on any ride through Cook County. Nor is this a new development in architecture. I can surely take judicial notice of the fact that my own home, a simple stucco house, built in 1910, has a second-floor space larger than the first, an attic larger than the second floor, and all three larger in area than the foundation. There is no identity between the area enclosed by exterior walls and that enclosed by a foundation, and the complaint contains no allegation that defendants' home has less than the required space within its exterior walls.

I would reverse the injunction order and dismiss the complaint.