BETTENDORF-STANFORD BAKERY EQUIPMENT COMPANY, Plaintiff-Appellee, *v.* INTERNATIONAL UNION OF UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW: LOCAL UNION NO. 1906, *et al.*, Defendants-Appellants.

Fifth District   No. 76-517

Opinion filed May 16, 1977.

JONES, J., dissenting.

Katz & Friedman, of Chicago (Harold A. Katz, Irving M. Friedman, and Stanley Eisenstein, of counsel), for appellants.

Crain, Hall & Cooksey, of Centralia (William P. Crain, of counsel), for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

This is an interlocutory appeal by defendants, Local 1906 of the United Auto Workers Union and 27 named individual union members and officers, pursuant to Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307). Defendants seek reversal of an order of the Circuit Court of Marion County denying their motion to vacate a temporary restraining order (TRO) issued without notice or bond after an *ex parte* hearing. Plaintiff-appellee Bettendorf-Stanford Bakery Equipment Company has

filed in this court a motion to dismiss the appeal as moot, which motion we ordered taken with the case.

On November 9, 1976, plaintiff filed a complaint for an injunction to prohibit defendants from certain picket line activities which were allegedly interfering with ingress to and egress from plaintiff's plant in Salem. The same day, without notice to the union or any of the individual defendants, plaintiff went before the court with a motion for a TRO. The motion was supported by two virtually identical affidavits, given by Salem police chief James Baity and plant manager Michael Munter. The affidavits alleged that some 25 picketers were blocking the driveway entrance to the plant and threatening and intimidating those attempting to enter, that the plant manager, employees, and other persons had been prevented from entering the plant by automobile, and that the picketers had ignored demands to cease and desist from these activities. After an *ex parte* hearing at which the court heard testimony of plaintiff's witnesses, it issued a TRO pursuant to section 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) enjoining the defendants from "interfering [with] and restraining the movement of traffic upon Plaintiff's premises, and from committing any other illegal or unlawful acts of intimidation or acts unrelated to the purposes for which picketing or demonstrations might be conducted * * *." On November 17, 1976, the court denied defendants' motion to vacate the TRO.

We turn first to plaintiff's motion to dismiss the appeal. The gist of that motion is that, even should this court hold that the court below erred in denying defendants' motion to vacate the TRO, no effectual relief could be granted because defendants did not seek damages for wrongful issuance of the TRO in their motion to vacate; therefore, according to plaintiff, now that the TRO has expired, this appeal deals only with a moot question or abstract proposition and should be dismissed.

■■ We cannot agree. By timely moving to vacate the TRO and then perfecting their appeal, defendants preserved for review the question whether or not the TRO was wrongfully issued. The question of damages, if any, does not come into issue until and unless an adjudication is made that the issuance was wrongful. Supreme Court Rule 307 (Ill. Rev. Stat. 1975, ch. 110A, par. 307) requires only that a party intending to take an appeal from an interlocutory order entered on *ex parte* application first present a motion to vacate to the trial court; there is no requirement that the appellant must request damages in the proceedings below. In *Bohn Aluminum & Brass Co. v. Barker*, 55 Ill. 2d 177, 303 N.E.2d 1 (1973), in holding that the denial of a motion to vacate a TRO is appealable under Rule 307, our supreme court said: "During the time when it remains in effect a restraining order could work substantial injury upon the defendant, injuries for which he should be entitled to recover damages if

the order was wrongfully issued." (55 Ill. 2d 177, 184, 303 N.E.2d 1, 5.) Plaintiff's motion to dismiss the appeal is denied.

Defendants present a number of reasons why we should hold that the court below erred in denying their motion to vacate the TRO. The most significant, and the one on which we base our decision, is the lack of compliance with the notice provisions of section 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1). That section provides, in pertinent part:

> "No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice * * * shall define the injury and state why it is irreparable and why the order was granted without notice * * *."

■■ As we have said before, these statutory provisions are not mere technicalities. (*G. H. Sternberg & Co. v. Cellini*, 16 Ill. App. 3d 1, 6, 305 N.E.2d 317, 321 (5th Dist. 1973).) Here, the motion for the TRO, the affidavits, and the complaint for injunction attached to the motion were totally silent as to any specific facts indicating that immediate and irreparable injury would result before notice could be given to defendants. Similarly, the court's order granting the TRO, while it recited in conclusory terms that defendants' acts "threaten irreparable [*sic*] and immediate damage to Plaintiff," did not define the injury or state why it was irreparable or why the order was granted without notice. The TRO indicates that it was entered at 11:55 a.m. Nothing appears of record to suggest why, at the very least, informal notice could not have been given to some of the individual defendants who were picketing plaintiff's plant earlier that morning that application for a TRO was going to be made.

As far as we can tell from this record, the situation in the instant case made even less of a compelling case for dispensing with notice than that in *Sangamo Electric Co. v. UAW*, 42 Ill. App. 3d 563, 356 N.E.2d 389 (4th Dist. 1976). There the court said:

> "Notice and the opportunity to be heard are at the core of our judicial system. As said in *Skarpinski v. Veterans of Foreign Wars* (1951), 343 Ill. App. 271, 98 N.E.2d 858, 860, the critical question for us to ask is whether, in the minutes or hours necessary for defendant to appear, defendant might do that which would seriously affect the issues in dispute.
>
> In the case at bar, it is apparent from the complaint that the seriousness of the events on the picket line was escalating. However, no facts are alleged which indicate that the situation

would be much changed in the few hours it would take to informally notify defendants.

\* \* \* As noted in *Skarpinski*, a telephone call can produce an appearance within minutes. Some notice, however informal, is greatly to be preferred to none at all. No facts appear in the record which would justify entry of the order at 9:35 a.m., without notice, rather than entry some time later that day after notice had been given." 42 Ill. App. 3d 563, 564-65, 356 N.E.2d 389, 390-91.

■■■ The law does not in any case favor the granting of injunctive relief without notice; such a drastic remedy is appropriate only under the most extreme circumstances. (See, *e.g., Miollis v. Schneider*, 77 Ill. App. 2d 420, 222 N.E.2d 715 (2d Dist. 1966), and cases cited therein; *cf. People ex rel. Thrasher v. Eisenberg*, 202 Ill. App. 63, 67-68 (1st Dist. 1916): "The policy of the law is that no one shall be deprived of any substantial right even temporarily without first being heard in his own defense.") Although ordinarily a presumption of validity attaches to the order of a court, no such presumption is indulged in favor of injunctive relief granted without notice. (*G. H. Sternberg & Co. v. Cellini*, 16 Ill. App. 3d 1, 305 N.E.2d 317 (5th Dist. 1973); *Berenson v. Berenson*, 34 Ill. App. 2d 376, 181 N.E.2d 357 (1st Dist. 1962).) The declared policy of this State disfavors the use of TROs or injunctions in labor disputes (see section 1 of the Anti-Injunction Act, Ill. Rev. Stat. 1975, ch. 48, par. 2a). We think, therefore, that a TRO granted without notice in the context of a labor dispute requires even closer than ordinary judicial scrutiny. The TRO in the instant case, for the reasons stated above, cannot withstand such scrutiny.

When injunctive relief is granted without notice where notice should have been given, the appellate court will reverse without regard to any other question. (*Sangamo Electric Co. v. UAW; Skarpinski v. Veterans of Foreign Wars*, 343 Ill. App. 271, 98 N.E.2d 858 (1st Dist. 1951).) Accordingly, the order of the Circuit Court of Marion County denying defendants' motion to vacate the TRO is reversed, and this cause is remanded to that court with directions that it grant the motion to vacate and hold a hearing on damages that may have been incurred by reason of the wrongful issuance of the TRO.

Reversed and remanded with directions.

CARTER, P. J., concurs.

Mr. JUSTICE JONES, dissenting:

I respectfully dissent.

The defendants in their brief allude to "certain picket line activities" in their attack upon the issuance of the temporary restraining order by the

trial court. It is now months following the incident which gave rise to this action and with the view in retrospect it is easy to refer to the incident by the ameliorative expression "certain picket line activities."

But this court must review the case as it was presented to the trial judge through the complaint, the affidavits and the testimony of witnesses. At the time they were considered by the trial judge there was definitely a sense of urgency present. The court was faced with what could have become an explosive and dangerous situation.

It was precisely for such situations that section 3—1 of the Injunction Act (Ill. Rev. Stat. 1975, ch. 69, par. 3—1) was designed. In express terms it authorizes the issuance of temporary restraining orders, without notice. It is a matter which lies within the broad discretion of the trial court to require or waive notice. (*Toushin v. City of Chicago*, 23 Ill. App. 3d 797, 320 N.E.2d 202; *Gentile v. Wilkins*, 8 Ill. App. 3d 413, 290 N.E.2d 672.) It is the function of this court only to review the exercise of discretion by the trial court and we may reverse only when we find that that discretion has been abused.

In my opinion there was no abuse of discretion. However, the majority has found that there was, stating that there was a total absence of specific facts indicating that immediate and irreparable injury would result before notice could be given. I believe the majority to be overly technical in its interpretation of the language used. Plaintiff's pleadings allege that mass picketing occurred, that the entrance to plaintiff's premises was blocked and that there was intimidation and threats of violence to plaintiff's employees. It would be difficult to be more precise in presenting the situation by the use of words. Defendants could, and presumably did, understand precisely what was meant by the wording of the order. There would be no prejudice or detriment to defendants by the language used.

Particular note should be taken that the temporary restraining order did not enjoin either picketing or striking; defendants' first amendment rights were carefully and fully protected and the Illinois statute prohibiting the use of injunctions against strikes (Ill. Rev. Stat. 1975, ch. 48, par. 2a) was not violated in any way. The temporary restraining order was directed solely at the intimidation, threatened violence and illegal activity that interfered with the rights of others.

There is reflected in the facts of this case the wisdom of the legislature in providing for the issuance of a temporary restraining order, without notice, but at the same time also providing assurance that there be a prompt hearing with adversary participation. Acting upon the information supplied to him the trial judge issued a temporary restraining order, without notice, directed solely at suppressing violent and illegal acts. What appeared to the trial judge to be an explosive situation was thereby defused. Yet, after further adversary hearing, the same judge

permitted the temporary restraining order to expire under the terms of the statute without elevating it to a preliminary injunction. Order was maintained. Rights of both parties were protected. Justice prevailed.

I would find that the trial court did not abuse its discretion in issuing the temporary restraining order.