W. T. Joos, Appellee, *vs.* THE ILLINOIS NATIONAL GUARD *et al.* Appellants.

*Opinion filed December 17, 1912—Rehearing denied Feb. 6, 1913.*

1. PARTIES—*when suit against National Guard and its officers is not suit against the State.* A suit to enjoin the National Guard and its officers from using a rifle range for target practice in such a way as to endanger the life and property of the complainant can not be regarded as a suit against the State, such as is prohibited by section 26 of article 4 of the constitution.

2. SAME—*when officers of the National Guard are answerable in the courts to the injured party.* The establishment of a rifle range and the practice of target shooting is a lawful exercise of power by the National Guard, but when the shooting is so conducted as to be a menace to the life of a citizen upon his own premises and to deprive him of the use of such premises the officers of the National Guard become trespassers and are answerable to the injured party in the courts.

3. INJUNCTION—*when complainant is not estopped to enjoin a dangerous use of rifle range.* The fact that the lessee of a farm assisted his mother, the lessor, in making a lease of a small portion of the farm to the National Guard for a rifle range does not estop him to enjoin the use of the range in such a manner as

menaces his life and practically destroys his use of the farm, where, at the time the lease was made, it was believed, owing to the natural formation of the land, that the premises leased would be the only portion of the farm affected by the use of the range.

4. SAME—*when complainant may maintain a bill for injunction in his own name.* A bill to enjoin the officers of the National Guard from using a rifle range in such a manner as to be a menace to the life of the complainant when upon his own premises and to practically deprive him of the use of his farm by reason of the danger from bullets makes a case of special damage, and may be maintained by the complainant in his own name, even though there may be other persons who are injured in the same manner.

APPEAL from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding.

B. M. CHIPERFIELD, (W. H. STEAD, Attorney General, and C. E. CHIPERFIELD, of counsel,) for appellants.

C. E. STONE, and WEIL & BARTLEY, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellee, W. T. Joos, and Philip Rastetter, filed their bill in chancery in the circuit court of Peoria county against the Illinois National Guard, Frank S. Dickson, adjutant general, and Fred Fauser, range officer, to enjoin them from using the premises known as Camp Grant rifle range, in Kickapoo township, in Peoria county, Illinois, for rifle practice. Before a decree was entered the bill as to Rastetter was dismissed on his motion and the cause proceeded to final decree with W. T. Joos as the only complainant. The bill, briefly summarized, alleged that complainant was residing upon and engaged in farming premises adjacent to said rifle range; that defendants had erected on the premises known as Camp Grant various targets, and the militia of the State of Illinois was using the same for the purpose of instructing certain members of the Illinois National Guard in rifle fire; that said rifle range and targets were so used from one to three times per week many months

in the year; that the use of the range was a constant danger and menace to complainant and his family; that bullets passed over complainant's premises, and, in addition to the disturbance and annoyance to him and his family, made it difficult for him to obtain labor to work on his premises; that from five to one hundred persons would be engaged in shooting at targets on said rifle range at one time; that the firing was in the direction of complainant's home; that many bullets passed over and near the residence of complainant, endangering the life of himself and family, and making it dangerous for complainant to prosecute his work of farming and gathering his crops and caring for his live stock. Defendants to the bill answered, denying the material allegations. The case was referred to the master in chancery to take the testimony and report his conclusions of law and fact. The master reported that the proof sustained the allegations of the bill; that the equities were with the complainant, and that he was entitled to an injunction restraining defendants from using said rifle range for target practice in such manner as to cause ricochet bullets or other dangerous missiles being sent across or upon the premises of the complainant. Objections to the report of the master were overruled by him and were renewed as exceptions before the chancellor. The chancellor overruled the exceptions and entered a decree enjoining the defendants from using the rifle range known as Camp Grant for target practice "in such manner as at any time to cause or permit ricochet bullets or other dangerous missiles being sent across or upon the premises of the said complainant, W. T. Joos, so adjoining the said Camp Grant rifle range." This appeal is prosecuted by the defendants to the bill to reverse that decree.

Appellee's mother owned 160 acres of farm land. Immediately south of it appellants leased lands from other parties for the establishment of a rifle range for use by the men in the practice of target shooting. For this purpose

a concrete abutment was erected, 135 feet long east and west and high enough to protect men stationed behind it for the purpose of observing and signaling the effect of the shots upon the target. The targets were in steel frames, generally six feet square, and were raised and lowered by a mechanical device operated by the persons stationed behind the concrete abutment to mark the effect of the shots. South of the abutment firing stations were established,— one for revolver practice at distances not exceeding 100 yards, and stations for rifle practice every 100 yards from 200 to 1000 yards. The firing from these stations was toward the farm of appellee's mother, which lay north of the targets. Just north of the targets the land of appellee's mother rose to an elevation of about 100 feet above the abutment upon which the targets were placed, and from her appellants leased land on the hillside back of the targets as a part of the rifle range. Appellee was at the time the bill was filed, and had been for several years prior thereto, lessee of his mother's farm and resided thereon with his family. He raised grain on the farm and kept cows and other stock thereon.

Appellants first contend the court had no jurisdiction to entertain the suit because the National Guard is a part of the State government of Illinois; that a suit against it is, in effect, a suit against the State, and both the State and its administrative officers are exempt from suit under section 26 of article 4 of the constitution, which reads: "The State of Illinois shall never be made defendant in any court of law or equity." We do not think this can properly be considered a suit against the State. The officers of the National Guard are charged with unlawful acts infringing the rights of appellee in the lawful use of his property. If it be conceded that the National Guard and its officers, while in the lawful discharge of their military duties, are exempt by the constitution from being sued, where they unlawfully deprive a citizen of his property or prevent his free enjoy-

ment of it, they cannot be considered as representing the State. The establishment of a rifle range and the practice of target shooting is a lawful exercise of power, but when it is so conducted as to be a menace to the life of a citizen upon his own premises and to deprive him of the rightful use of said premises, the officers of the National Guard become trespassers and are not representatives of the State. We would not like to say that the officers of the National Guard could take property without compensation to the owner, by making it so dangerous to the life and safety of the owner as to prevent his use of it and that he would have no remedy in the courts. When the officers of the National Guard exceed their authority and by wrongful act injure another, they should be, and are, answerable to the injured party in the courts.

In *Osborn* v. *United States Bank,* 9 Wheat. 738, the Supreme Court of the United States considered the jurisdiction of a court of equity to enjoin State officers of the State of Ohio, the State not being made a party, from the performance of unlawful acts which the bill alleged would lead to irreparable injury to individuals. The point was raised that if any case was made by the bill for the interference of a court of chancery it was against the State of Ohio, and an action against the State was prohibited by the constitution. It was admitted by the court in that case that the State had a direct interest in the suit, but in an exhaustive opinion by Chief Justice Marshall it was held that the alleged official oppression of the officers of the State made it a proper case for the interference of a court of equity.

In *Ryan* v. *Brown,* 18 Mich. 196, (100 Am. Dec. 154,) which was a bill for injunction by a private land owner to restrain the State canal commissioners from certain acts alleged to be an unlawful interference with the property of complainant, it was held a court of equity had jurisdiction,

and *Osborn* v. *United States Bank, supra,* was cited and commented upon.

In *Mott* ·v. *Pennsylvania Railroad Co.* 30 Pa. St. 9, (72 Am. Dec. 664,) it was sought to enjoin the Governor of the State of Pennsylvania from selling, under alleged authority of an act of the legislature, at public auction, certain public works and property. The Governor denied the court's jurisdiction, and upon this question the court said: "It is objected that the Governor is not subject to this form of our jurisdiction. It is far from our intention to claim the power to control him in any ·matter resting in executive discretion, but the rule of law seems to be, that when the legislature proceeds to impose on an officer duties which are purely ministerial he may be coerced by *mandamus* or restrained by injunction, as the rights of the parties interested may require. In such a case no individual in the land, however high in power, can claim to be above the law."

In *Smyth* v. *Ames,* 169 U. S. 466, it was held a bill for injunction against State officers of the State of Nebraska for the purpose of preventing the enforcement by them of an unconstitutional act of the legislature, to the injury of the rights of the complainants, was not a suit against the State. The court said: "But to prevent misapprehension we add, that within the meaning of the eleventh amendment of the constitution the suits are not against the State but against certain individuals charged with the administration of a State enactment, which, it is alleged, cannot be enforced without violating the constitutional rights of the plaintiffs. It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them, as officers of a State, from enforcing an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the State, within the meaning of that amendment."

"The preventive jurisdiction of equity extends to the acts of public officers, and will be exercised in behalf of

private citizens who sustain such injury at the hands of those claiming to act for the public as is not susceptible of reparation in the ordinary course of proceedings at law. And it may be stated, as a general rule, that when public officers, under color and claim of right, are proceeding to impair either public or private rights, or when their proceedings will result in serious injury to private citizens without any corresponding benefit to the public, or when the aid of equity is necessary to prevent a multiplicity of suits, an injunction will be allowed. Thus, commissioners acting under color of law and proceeding without any real legal authority to permanently appropriate the land of a private citizen to a purpose connected with a work of internal improvement, may be enjoined from proceeding with such appropriation; and in such a case it is no answer to say that the land, independent of the use to which it is to be put in making the improvement, would be of little value, or that the injury to the owner would be trivial by allowing the work to proceed. So where commissioners of highways are about to remove plaintiff's house as encroaching upon a public highway, their acts will be enjoined where the house does not, in fact, so encroach. And where penitentiary commissioners have made a contract with the plaintiff for the hiring out of State convicts, and afterwards these officials, and the successors of those whose terms have expired, adopt a resolution abrogating the contract without legal excuse, relief is properly granted restraining them from refusing to be bound by the contract." (2 High on Injunctions,—4th ed.—sec. 1308.)

The test for determining whether a suit will lie against State officers is whether they were acting within the scope of their authority or were transcending that authority. (2 High on Injunctions,—4th ed.—sec. 1309.) The case of *Board of Liquidation* v. *McComb*, 92 U. S. 531, is also directly in point in support of the right of a court of equity to entertain a bill against State officers.

It is next contended that appellee is estopped from prosecuting the suit against appellants. The material facts upon which this contention is based are as follows: Appellants had previous to September, 1909, leased 23.7 acres of land from J. W. Kelly, which joined the 160 acres owned by Mrs. Joos, for the purpose of establishing a rifle range. In September, 1909, Mrs. Joos made a lease to appellant Dickson, then assistant adjutant general of the State of Illinois, for nine acres of her 160-acre tract, particularly described in the lease. The tract so leased was substantially 520 feet wide north and south and 772½ feet long east and west, and lay north of the abutment upon which the targets were placed. Appellee had, previous to the making of this lease and before the rifle range was completed, complained that its use would prevent or interfere with his using a portion of the 160 acres lying immediately back of the abutment. Appellants proposed to lease the hillside, or a part of it, and appellee assisted his mother in negotiating the lease. The lease was for five years, and the consideration agreed to be paid was $100 per year, payable semi-annually, on the first days of January and July. These payments were made as they matured, and some of the warrants were received by appellee for the use of his mother. The lease contained this provision: "It is mutually agreed by and between the parties hereto that said premises are leased for the purpose of a rifle range and shall be used by the National Guard of Illinois as they may direct." The appellants insist that as Mrs. Joos knew the purpose for which the land leased would be used, she would be estopped from enjoining the use for which it was leased, and all persons in privity with or claiming through or under her would be also estopped.

Appellee had for years prior to making the lease to appellants been the lessee of his mother's 160 acres and in possession of the same. He leased it verbally by the year. He knew the purpose for which the nine acres were leased to appellants, and, as above stated, assisted his mother in

making the lease. Appellants say that, in addition to his being in privity with the owner of the premises he assisted in procuring the lease to appellants with knowledge of the use to which the premises were to be put by appellants, and is now estopped to complain. We think this position untenable under the facts in this case. We think it clear that it was the honest belief of appellee and his mother that the premises leased to appellants were the only portions of the farm that would be interfered with by the use to which they were intended to be put by the lessee. There is nothing to indicate, in the slightest degree, that by leasing the small tract the lessor contemplated or supposed she was giving appellants any authority to use, or to render dangerous to her and her tenants the use of, any other part of the farm. The crest of the hill back of the targets was substantially 100 feet above the targets, and it was a reasonable supposition that, in the proper use of the range, bullets would not pass over the top of the hill and render dangerous the use of the other parts of the premises. The lease did not authorize appellants to use any of the farm except that portion of it embraced within their lease, and if they are so using it, it is unauthorized, and neither the owner nor her tenant is estopped to complain. In *Thor* v. *Oleson,* 125 Ill. 365, it was said the doctrine of estoppel proceeds upon the theory that a party is forbidden to set up his legal title where he has so conducted himself in regard to the property that to do so would be contrary to equity and good conscience. In *Wright* v. *Stice,* 173 Ill. 571, the court said: "If one party makes representations, either in words or conduct, which induced the other party to proceed in a certain way, such representations cannot be regarded as constituting an estoppel *in pais,* unless the party making them had full knowledge of all the facts or had been guilty of gross negligence in failing to learn such facts." An admission to have the effect of an estoppel must be made with knowledge of the facts or for the purpose of fraud. Au-

thorities to the same effect might be multiplied in great
number.    When appellee, prior to the making of the lease,
complained that the use of the range would deprive him of
the use of a portion of the land he had rented, officers of
the National Guard inspected the ground with him, and the
lease covered that portion of the farm which it was sup-
posed would be affected by the use of the range.    It does
not appear, as we have said, to have been contemplated by
anyone that the portion of the farm not leased to appellants
would also be affected and its use interfered with.    Under
the facts we think the doctrine of estoppel has no appli-
cation.

It is further contended by appellants that, independent
of the questions of jurisdiction and estoppel, the proofs do
not make a case entitling appellee to the relief prayed.    The
fact that while firing was going on at the rifle range many
bullets went beyond the hill back of the targets and over
appellee's premises is practically undisputed.    Numerous
witnesses, in addition to appellee and members of his fam-
ily, testified to hearing the whistle of bullets passing through
the air while at the residence and on various other parts of
the farm.    Some employees of appellee testified this occur-
red so frequently they were afraid to work on the prem-
ises.    Some of the witnesses testified that bullets passed very
near them.    Two bullets struck the roof of the residence,
passed through the shingles and imbedded themselves in
the sheeting underneath.    One struck and was imbedded in
the doorjamb of the milk-house.    All three of these bullets
were removed by appellee and were produced and intro-
duced in evidence on the trial.    They were the same kind
of bullets used by the men in their target practice.    It is
contended by appellants that one or more of these bullets
could not, on account of the direction from which they en-
tered the buildings, have been fired from the rifle range,
and the testimony of experts was introduced to support this
contention.    Appellants introduced testimony that the prac-

tice on the rifle range had been carefully conducted, and on account of the line of fire and the contour of the land it was impossible by direct fire to injure the part of appellee's premises occupied by the buildings. Experts testified that a ricochet bullet might strike the buildings but was not likely to do so. They also testified that a ricochet bullet could be heard a distance of 500 yards, and that its distance from one who heard it could not be determined.

What we have said as to the testimony is but a brief statement of such portions of it as we think necessary to present the contentions of the respective parties. We have read all the evidence, and are firmly convinced it authorized the conclusion that during target practice many bullets passed over various parts of appellee's premises so near to persons thereon as to be heard by them and cause great fear. We are also of opinion that on account of the three bullets which struck appellee's buildings being the same kind used by the men on the rifle range, and the fact that they were heard to strike the buildings while target practice was going on, and the further fact that no other firing was heard in the vicinity, the conclusion was warranted that the bullets were fired from the rifle range. It may be the bullets that struck the buildings were ricochet bullets. The fact that the buildings were not directly in line with the firing station and targets but were 440 feet east of a line drawn from the 1000-yard firing station through the center of the line of targets would tend in some measure to support that view, unless the shooting was very wild. But even if they were ricochet bullets, the fact remains that they were dangerous to persons upon appellee's premises. The proof shows many bullets struck trees on top of the hill back of the targets. It is very probable that many of them were deflected by striking the trees and other objects, and it is also probable that some bullets fired above the crest of the hill continued in a straight line over appellee's farm. The finding of the decree that target practice as it was car-

ried on was "a continual menace to the lives and well being of complainant, William T. Joos, and his family, and of his employees, during the periods of time each year that such target practice is carried on," was warranted by the evidence.

This action was not to restrain the disturbance of a common and public right. The bill made a case of special damage to appellee, and he was therefore authorized to maintain the bill in his own name, even though it might appear that others had been injured from the same cause. *Hoyt* v. *McLaughlin,* 250 Ill. 442.

The decree is affirmed.

*Decree affirmed.*