CHARLES KOLSTAD *et al.*, Plaintiffs-Appellees, v. BRUCE RANKIN, Defendant-Appellant.

Fourth District   No. 4—88—0799

Opinion filed March 2, 1989.

Marc J. Ansel, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellant.

L. Keith Hays, of Monticello, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

This is an interlocutory appeal by defendant Bruce Rankin from the order of the circuit court of Piatt County granting a preliminary injunction against defendant and in favor of plaintiffs Charles Kolstad, Mary Lucille Hays, and Mary Heath Hays. Plaintiffs own property adjacent to that owned by defendant. Defendant has a firing range located on his property. Plaintiffs filed a verified complaint for injunctive relief on October 5, 1988. On the same day, the trial court issued a temporary restraining order, which would expire on October 15, 1988.

On October 12, 1988, a hearing was conducted. Following that hearing, the trial court issued the preliminary injunction ordering defendant "to refrain from discharging or permitting others to discharge any firearm at or within premises owned, controlled, or occupied by him in Section 34, Township 19 North, Range 6 East of the Third Principal Meridian, situated in Sangamon Township, Piatt County, Illinois, until further order of the court." This order was en-

tered on October 21, 1988, and defendant filed the notice of interlocutory appeal on October 31, 1988.

Defendant occupies real estate in rural Piatt County, zoned for agricultural use. Defendant has lived there consistently since 1959. Defendant, with a partner who also lives on this property, operates a business from his house known as Williams Trigger Specialties. In this business, defendant, a federally registered gunsmith, works on firearm firing mechanisms.

Also located on the property is a firing range, which has been there since 1959. The range originally consisted of a hill or berm used as a backstop for firing at targets. The berm was originally 12 feet high and 20 feet wide, but was extended up to 100 yards wide in 1974. The height of the berm was increased to 30 feet in 1987. Also in 1987, defendant built a rectangular berm to allow 360-degree firing.

Defendant allows his friends to use the firing range, in addition to using it himself. He does not permit strangers to use it. In the last several years, he has also allowed various law enforcement agencies to use the range for training, practice, and qualification, including the Champaign police department, the Urbana police department, and the Ludlow police department. In 1987, the Champaign Police Department Strategic Weapons and Tactics (SWAT) team was permitted to use the range. This SWAT team, consisting of 12 people, has used the range 10 or 15 times in the past year. The most recent use by the SWAT team was on October 4, 1988.

Defendant has never charged a fee for the use of his range. He has, however, considered putting his range to commercial use at some time in the future.

Defendant is almost always present when the range is in use by private individuals other than law enforcement personnel. In all the years that the range has been used, there has never been an injury or near-injury or complaint to defendant about the range or its use.

Kolstad purchased the property immediately west of defendant's parcel on August 1, 1988, having signed the contract to purchase in May before he knew about the firing range. Plaintiffs Mary Heath Hays and Mary Lucille Hays reside on other property west of defendant's property. Mary H. Hays is 76 years old, was born in the immediate area, and has lived in her current residence since 1973. Mary Lucille Hays has lived in another house on the same parcel for two years, though she has utilized the family property throughout her life.

That portion of Kolstad's property nearest defendant's firing range is mowed pasture with scattered trees. His house is on the other side of his property. He has two children, ages six and eight, who play

with the Hays children in the Hays' timber. Before he took possession, he learned of the firing range and met defendant. Defendant showed him the range, gave him a demonstration of noise levels, and discussed his future plans for the range.

On October 4, 1988, Kolstad was in his house and heard short bursts of gunfire. He looked toward the Rankin property and observed thereon a half dozen or so individuals and three to five cars. He described the noise as "not faint *** a clear sound *** a clear annoyance." He had not previously heard automatic weapons, but heard single fire. He acknowledged that the shooting range was 75 to 100 yards from the boundary of his property, and that his house was 30 degrees off the firing line such that a bullet would probably not strike his house in the absence of the berm. Kolstad has never observed a bullet striking his house or found a spent bullet. When asked to identify the danger from the range, he referred to the use of live ammunition being his major concern as well as a decline in property values resulting from noise and anticipated commercial activity. He has warned his children about going onto defendant's property.

The Hays property includes timberland consisting of oak, walnut, and some hickory trees. Although metal objects imbedded in the trees would depress their value, Mary Heath Hays has never had a complaint of a bullet embedded in a trunk of a tree and admits that a bullet through the crown of a tree would do little or no damage. She also admitted that it was almost impossible for a bullet to hit her house from the range. Although she is hard of hearing, she has heard gunfire on or around her property when she was outside or had a window open. If the windows are closed and the air-conditioning on, she does not hear anything outside. She has heard gunfire as early as 1973 when she moved back to the farm, but she first learned of defendant's firing range in 1986.

Mike Hogge is Mary L. Hays' husband. He and his family have lived on the Hays property for two years. They have two sons, ages seven and three. He testified that his children "play all over the farm." He has been nervous about gunfire for the past year and has heard it "fairly regularly." On October 4, he heard machine gun fire which was "fairly loud." It disturbed and startled him, although it did not startle his three-year-old son. When asked on cross-examination how loud it was, he said it was "as loud as a car honking its horn maybe a block away."

Mary L. Hays testified that as a child she played and camped in the timber on the Hays farm. However, since returning to the farm two years ago, she only goes out once in a while and has not noticed a

difference in the animal population. She feels it's important for her children to learn about wooded areas as she did as a child, and has instructed her oldest son as to the boundary line between defendant's property and the Hays farm. During the summer prior to the hearing, this witness could no longer find a trace of the fence between the properties and further observed that a road had been bulldozed allowing for direct access to the woods from the firing range.

Velva Wickstrom is the zoning administrator for Piatt County. She identified the Piatt County Revised Zoning Ordinance as revised in May 1983, as plaintiff's exhibit No. 1, and she indicated that defendant's property is zoned A-1, agricultural as zoned, the permissive uses for this property are "any agricultural activity, single family farm dwelling, park or forest preserve, public school, elementary and/or high, roadside stand for the display or sale of agricultural products raised on the premises and home occupation not employed, [sic] not employing any person outside the immediate family." Within the ordinance, "home occupation" is defined as "any occupation or profession carried on by a member of the immediate family, residing on the premises in connection with which there is used no sign other than a name plate, no more than four square feet in area, or no display that will indicate from the exterior that the building is being utilized in whole or part for any purpose other than that of a dwelling; no more than one person outside the immediate family is employed on the premises; no mechanical equipment is used except such as is customary for purely domestic household purposes, and which is not offensive to adjacent property users, and does not interfere with the reasonable use of adjacent properties." There is no reference to a shooting range in the ordinance, although there is an ordinance pertaining to outdoor recreational facilities such as stables, lakes, swimming pools, tennis courts, and golf courses in sites of less than five acres.

She became aware of the firing range in 1988 and spoke to defendant about his use of the range in May 1988. She and the State's Attorney told defendant that if he charged money for the use of the range, the administrator would require a conditional use permit. The State's Attorney felt that if he did not charge for use of his firing range, then there was no requirement that he apply for a permit. Plaintiff's objection to Wickstrom testifying about this legal conclusion was sustained.

Officer Ronald Bryant of the Champaign police department testified he holds a "Police Training Institute Range Master Certification" and is the leader of the Champaign police department's SWAT team. Bryant learned of Rankin's range from a newspaper article and has had his team at the range 10 or 15 times in the past year. When the

team practices at the range, they use a full range of weapons, though handguns are used the majority of the time. In early October 1988, such use included fully automatic weapons.

Bryant testified that the police department had difficulty finding a good firing range in the area. He testified that Rankin's range is the safest one in the area because the berms are higher and bigger than other ranges with which he is familiar, such as the Police Training Institute in Champaign (20 feet high), the Illinois State Police range in Pesotum (14 feet high), and the National Guard range at Oakwood. He stated there is no way the Hays house could be hit by firing from the range unless the bullet went straight up in the air, spent all its energy and fell on the house. A spent bullet could, however, put an eye out if someone were looking up or could cause a knot on a person's head. If someone were firing a high-powered rifle and shot over the top of the berm, the bullet could travel over a mile before falling to earth. He acknowledged that police make mistakes and guns misfire, and that he has been "uncomfortable" when automatic weapons were fired around his children. He pointed out that the recent changes to defendant's firing range have made it safer. Finally, he stated that defendant has refused to accept payment of money or a fee for the use of the range.

Gary Marsh is chief of police of the Ludlow police department and has used the range with his officers 12 to 20 times in the past two years. He has never paid any money to defendant for the use of the range. His force has used all types of weapons on the range. Marsh is also a "Certified Firearms Instructor," and he described the defendant's range as safer to use than the range at the Illinois State Police location in Pesotum. He noted that the berm at Rankin's range is one-third higher than most, making it safer. When asked on cross-examination to compare the safety to other ranges, he pointed out that Rantoul's outdoor range is in the waste treatment facility and there is a farm adjacent to it. Regarding the Illinois State Police range in Pesotum, there are open fields beyond the berm and persons using the range shoot away from Interstate 57. Only handguns may be used there. The firing range for the City of Paxton is in farm field and the range for the City of Mattoon is in a wooded area.

David Smith has known defendant for 29 years. He has shot on defendant's land as far back as 1959. He has shot pistols, revolvers, shotguns, and other weapons. He last shot a 22 caliber rifle on the property in early 1988. He noted that the berms at the range are very high and that defendant is very safety-conscious in regard to the use of the range.

■ The first issue to consider on appeal is whether the trial court

improperly granted the preliminary injunction based on the prayer for relief in the complaint rather than requiring plaintiffs to file a motion for preliminary injunction. There was a request for a preliminary injunction in the prayer for relief of plaintiffs' verified complaint, and over defendant's objection, the trial court considered this matter on the basis of the prayer for relief without the plaintiffs having filed a written motion. Defendant cites no mandatory authority for the proposition that a motion was required to be filed. Nichols on Illinois civil practice states:

"The application for temporary restraining order or preliminary injunction may be included in the original complaint, in which case the complaint must be verified, or it may be requested by motion filed at the same time or later and supported by proper affidavits. Even though requested in the complaint, a motion is necessary in order to bring it to the attention of the court and in order to settle the question of notice and bond." 3 C. Nichols, Illinois Civil Practice §2276, at 23 (rev. vol. 1987).

Defendant, in arguing that plaintiffs should have filed a motion for preliminary injunction, is confusing the form of notice with the need for notice. Certainly defendant must be given notice of the hearing on the preliminary injunction, but courts have suggested that where written notice is not practical, even a telephone call or other oral notice might suffice. (See *Board of Education of Community Unit School District No. 101 v. Parlor* (1981), 85 Ill. 2d 397, 424 N.E.2d 1152; *Streamwood Home Builders, Inc. v. Brolin* (1960), 25 Ill. App. 2d 39, 165 N.E.2d 531; *Skarpinski v. Veterans of Foreign Wars* (1951), 343 Ill. App. 271, 98 N.E.2d 858.) Unquestionably, formal notice is preferred to informal notice. But in this case, as to notice, there is nothing about which defendant should be complaining.

Plaintiffs filed a verified complaint requesting, among other things, a preliminary injunction. At the same time the trial court issued the temporary restraining order, the trial court set the date for the hearing on the preliminary injunction for one week later. Defendant certainly had notice of the hearing as well as notice of the facts which allegedly formed the basis for the request for a preliminary injunction.

Since defendant raises no challenge to notice or bond, to require the trial court to proceed only on a written motion would be of dubious value. After all, defendant suggests no reason the trial court could not consider the matter on the court's own motion as long as notice is provided to all the parties. Clearly, the trial court properly proceeded in this case.

The second issue to consider is whether the trial court erred in allowing lay witnesses to give opinion testimony concerning noise levels. The trial court, over defendant's objection, allowed the witnesses to testify to what they heard and their experiences, that is whether the noise disturbed them. They did not testify as experts in any form regarding noise levels.

■ A lay witness is not prohibited from testifying as to an opinion. It is often virtually impossible to distinguish between fact and opinion or to communicate the facts upon which the opinion is based. A lay witness may testify to an opinion which is rationally based on that witness' perception such that the opinion would be normally arrived at from the facts observed. Nevertheless, the testimony is only to be introduced if it helps the trier of fact to understand the testimony or determine the facts. (*Freeding-Skokie Roll-Off Service, Inc. v. Hamilton* (1985), 108 Ill. 2d 217, 483 N.E.2d 524; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §701.1, at 442-45 (4th ed. 1984).) In this case, the trial court properly allowed the witnesses to summarize their sensory impressions.

■ The next issue to consider is whether the granting of the preliminary injunction was an abuse of discretion on the part of the trial court because the evidence presented at the hearing fails to establish plaintiffs' reasonable likelihood of prevailing on the merits or irreparable harm for which there is no adequate remedy at law. The Illinois Supreme Court has recently recited the standards for determining the propriety of issuing a preliminary injunction in *In re Adoption of Scraggs* (1988), 125 Ill. 2d 382, 388:

> "The purpose of a preliminary injunction is to preserve the status quo pending a decision on the merits of the cause. (*Interstate Material Corp. v. City of Chicago* (1986), 150 Ill. App. 3d 944, 951; *Bismarck Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 175.) It is an extraordinary remedy which is applicable only to situations where an extreme emergency exists and serious harm would result if it is not issued. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) The plaintiff must establish four factors before an injunction will be granted: (1) that he possesses a clearly ascertained right in need of protection; (2) that he will suffer irreparable harm without the injunction; (3) that there is no adequate remedy at law for his injury; and (4) that he is likely to be successful on the merits of his action. 108 Ill. 2d at 387."

This court has also recently considered preliminary injunctions and stated in *Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill.

App. 3d 997, 1003, 516 N.E.2d 1313, 1317:

"In addition to consideration of the above criteria, the trial court must conclude that the benefits of granting the injunction outweigh the possible injury which defendant might suffer as a result thereof. (*The Packaging House, Inc. v. Hoffman* (1983), 114 Ill. App. 3d 284, 448 N.E.2d 947; *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 363 N.E.2d 6.) Finally, as the decision to grant or deny preliminary injunctive relief rests within the sound discretion of the trial court, and because its findings may not be disturbed absent a showing of an abuse thereof (*Shorr Paper Products, Inc. v. Frary* (1979), 74 Ill. App. 3d 498, 392 N.E.2d 1148; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 329 N.E.2d 414), the role of a reviewing court is limited to a determination of whether those findings are contrary to the manifest weight of the evidence. *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719."

In its order issuing the preliminary injunction, the trial court included the following findings of fact:

"6. Prior to 1986, the Defendant used a portion of the property occupied by him for casual target shooting.

7. That subsequent to 1986 and thereafter, the Defendant commenced operation of and continues construction of a commercial firing range facility and has permitted outside groups to use that facility for the firing of high powered rifles and fully automatic weapons thereby changing the character of the prior use of the land creating and causing increased disturbances from noise and traffic and risk of injury to the Plaintiffs and their children while using their own property.

* * *

10. That the noise generated by the operation of the firing range disturbs and infringes upon the use of Plaintiffs' property as their residences, and its operation constitutes a hazard to the children of the Plaintiffs, interferes with the use of the Plaintiffs' premises for recreation, interferes with the Plaintiffs' use of the premises to produce marketable timber.

11. That the operation of the said firing range constitutes an unreasonable interference with the Plaintiffs' rights to quiet enjoyment of their property and interferes with their lawful use of their property and constitutes a nuisance at law.

12. That, unless the Court issues its Preliminary Injunction, the operation of the said firing range will cause the immediate and irreparable deprivation of the Plaintiffs' rights to quiet en-

joyment of their property and continue to cause that deprivation for which there is and can be no adequate remedy at law.

13. That, the Defendant has not shown any economic or other damage which might or could be caused to him by the issuance of a Temporary Injunction [*sic*]."

In support of his argument that the plaintiffs failed to show a reasonable likelihood of success on the merits, defendant raises three contentions: (1) the evidence does not support a finding that the use of the firing range was a danger to plaintiffs or their children; (2) the evidence of noise nuisance is insufficient; and (3) the trial court's finding that the county zoning ordinance was violated does not support the issuance of the preliminary injunction. Although an injunction will not issue to restrain an ordinance violation in the absence of clear and distinct evidence the plaintiffs are sustaining or will sustain a substantial injury (*Hartlett v. Dahm* (1981), 94 Ill. App. 3d 1, 418 N.E.2d 44), the trial court in the instant case specifically found an infringement on plaintiffs' use of their property because of noise as well as danger to plaintiffs' children. In addition, there was sufficient evidence in this case to support the granting of the preliminary injunction even without the ordinance violation being considered.

Where injury is threatened by the lawful use of a firing range, the courts of this State will enjoin the use of the firing range. (*Joos v. Illinois National Guard* (1912), 257 Ill. 138, 100 N.E. 505.) Defendant relies heavily on *Smith v. Western Wayne County Conservation Association* (1968), 380 Mich. 526, 158 N.W.2d 463. However, *Smith* involves the affirmance of an order denying an injunction against the use of a firing range. Had the trial court in this case denied the preliminary injunction, then perhaps the evidence could be said to support such a ruling. But here the trial court granted the injunction, and there is sufficient evidence in the record to support the ruling both as to possible injury and as to noise.

High-powered rifles are used which can project a shell for over a mile, if the berm does not impede the progress of the shell. Persons utilizing the range can now shoot 360 degrees rather than only one direction. And even a spent shell could cause some injury.

Any unreasonable, unwarranted, or unlawful use of one's property such that another's use and enjoyment of his property is invaded by a material annoyance, inconvenience, discomfort, or hurt is a nuisance. (*The Great Atlantic & Pacific Tea Co. v. La Salle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193.) In determining whether a particular annoyance constitutes a nuisance, the court is to consider the effect of the annoyance on an ordinary, reasonable person,

rather than the effect on a person who is abnormally sensitive. (*Belmar Drive-In Theatre Co. v. Illinois State Toll Highway Comm'n* (1966), 34 Ill. 2d 544, 216 N.E.2d 788.) Defendant in his brief admits that courts of this State have recognized that noise can cause a nuisance, but defendant suggests those cases involve frequent or constant noise occurring at night in urban areas. That does not negate the possibility of an actionable nuisance based on noise occurring with less frequency in a rural area. Regardless of frequency or location, automatic weapon fire on a neighbor's land would cause discomfort or annoyance to an ordinarily reasonable person.

■ In arguing that plaintiff has failed to show an irreparable harm for which there exists no adequate remedy at law, defendant does not relate this argument to either noise or possible injury. While it is true the Hayses can be compensated for any damage to the timber, defendant does not demonstrate how plaintiffs can be compensated for disturbances from noise, or the need to avoid certain areas of plaintiffs' own property to avoid the possibility of being injured. In this case, there is no legal or equitable remedy which can make plaintiffs whole for the inconvenience suffered by plaintiffs during the pendency of the cause on the merits if the preliminary injunction does not issue. See *Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 508 N.E.2d 1053.

■ The fourth issue raised by defendant is whether the granting of the preliminary injunction was an abuse of discretion because the trial court failed to balance the benefits of granting the relief with any possible injury to defendant or the public. Defendant has failed to show any private or public interests which, on balance, require protection. Defendant steadfastly contends he is not operating the firing range as a commercial venture. If not, what harm could defendant possibly incur if he and his friends do not use the range pending the outcome of the litigation, particularly in light of the fact that the use up to now has been infrequent? Defendant does not contend the use of the range is required for his business.

The only arguable public benefit is the use by local law enforcement agencies, but they have other firing ranges to utilize. If the municipalities for which they work feel there is a need to train these people in "high-powered and strategic weapons," then it is the obligation of the municipalities to provide a safe location for such training which does not disturb others' use and enjoyment of their property. However, since the municipalities have not provided such facilities, the court could logically conclude such training is not a significant factor in maintaining the competence and readiness of law enforcement person-

nel. The facts were before the court and the court considered any possible inconvenience.

■■ ■ Defendant also argues the granting of the preliminary injunction was an abuse of discretion because the order altered rather than maintained the status quo. In general terms, the purpose of a preliminary injunction is to maintain the status quo, defined as the last, peaceable, uncontested status preceding the litigation, while the cause pends a determination on the merits. (*Lee/O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 516 N.E.2d 1313.) The preliminary injunction is designed to prevent a threatened wrong or the further perpetration of an injurious act. *Toushin v. City of Chicago* (1974), 23 Ill. App. 3d 797, 320 N.E.2d 202.

Defendant contends the "status quo" is the set of circumstances which existed immediately prior to plaintiffs' complaint. Defendant ignores the fact that the failure to issue a preliminary injunction could result in injury which had not previously occurred. Therefore, the preliminary injunction here maintains the status quo by preventing a threatened wrong. The preliminary injunction also prevents the further perpetration of those acts causing the noise which forms the basis of the nuisance. Therefore the trial court has not committed an abuse of discretion warranting the reversal of the order.

■■ ■ Lastly, we consider whether the preliminary injunction is impermissibly overbroad. In *Streif v. Bovinette* (1980), 88 Ill. App. 3d 1079, 1085, 411 N.E.2d 341, 346, the court stated:

"There is an abiding certainty in both statutory and case law that an injunction should be as definite, clear and precise in its terms as is possible so that there may be no excuse or reason for failing to comprehend or obey its prohibitions. The act enjoined or directions given must be delineated with the particularity requisite to command obedience, enable enforcement, and allow an understanding of exactly what is forbidden. (*Illinois Power Co. v. Latham* (1973), 15 Ill. App. 3d 156, 163[, 303 N.E.2d 448]; *Illinois School Bus Co. v. South Suburban Safeway Lines, Inc.* (1971), 132 Ill. App. 2d 833, 840, 270 N.E.2d 200; *Hoffmann v. Hoffmann* (1965), 59 Ill. App. 2d 459, 462, 208 N.E.2d 579.) And certainly, where rights of the nature here concerned may be subject to curtailment, '[t]he restraint imposed by an injunction should not be more extensive than is reasonably required to protect the interests of the party in whose favor it is granted, and should not be so broad as to prevent defendant from exercising his rights.' *People ex rel. Traiteur v. Abbott* (1975), 27 Ill. App. 3d 277, 282-83, 327 N.E.2d 130 [,134]."

In the case at bar, the directive of the trial court's order is as follows:
"NOW, THEREFORE, IT IS ORDERED AND ADJUDGED:

1. That the Defendant, Bruce Rankin, is ordered to refrain from discharging or permitting others to discharge any firearm at or within the premises owned, controlled or occupied by him in Section 34, Township 19 North, Range 6 East of the Third Principal Meridian, situated in Sangamon Township, Piatt County, Illinois, until further order of this Court."

Defendant complains that the order prohibits the discharge of firearms of any kind not only at the range, but anywhere on defendant's property at any hour of the day or night, regardless of circumstances, thereby prohibiting hunting. Defendant also complains the order prohibits shooting in self-defense, but no court is going to render an advance authorization for defendant to shoot in self-defense. Plaintiffs concede the order for preliminary injunction may be overbroad, suggesting the order should prohibit discharging weapons on the firing range or other than as permitted by the Wildlife Code (Ill. Rev. Stat. 1987, ch. 61, par. 1.1 *et seq.*) and the rules and regulations of the Illinois Department of Conservation.

In addition, defendant suggests that the order could still be effective if it limited the use of the range to certain times of day and certain types of weapons. Based on the record before us, we are unable to determine what limitations would be appropriate, but the trial court is certainly empowered to consider evidence along these lines and modify the order.

We agree the scope of the order is too broad. Since the cause must return to the trial court for consideration of the permanent injunction, the trial court on remand should conduct a hearing as to the appropriate scope of the preliminary injunction order needed to protect plaintiffs and modify the order. It is appropriate at such hearing to consider the types of weapons that can be used, the place of their use, and hours of their use as well as consideration of defendant's business, a federally registered gunsmith working on firearm firing mechanisms.

Affirmed in part; reversed in part and remanded with directions.

McCULLOUGH, P.J., and GREEN, J., concur.