**Janet K. RASSIER, Plaintiff and Appellant,**

v.

**Garry V. HOUIM, Defendant and Appellee.**

Civ. No. 910402.

Supreme Court of North Dakota.

Aug. 19, 1992.

---

David Rodger Bliss, Bismarck, for plaintiff and appellant; appearance by Janet Rassier.

Rodney K. Feldner of Feldner Law Firm, Mandan, for defendant and appellee; appearance by Garry Houim.

VANDE WALLE, Justice.

Janet Rassier appealed from a district court judgment dismissing her lawsuit which sought to abate a private nuisance created by the use of a wind generator in a residential area. We affirm.

Garry Houim erected a tower and installed a wind generator on his residential lot in north Mandan in 1986. In October 1988, Rassier and her family purchased the adjoining lot and moved a mobile home onto the lot. Two years later, in November 1990, she sued Houim, claiming that his wind generator was a private nuisance and that it was erected in violation of the restrictive covenants applicable to their residential development. After a bench trial, the district court dismissed Rassier's claims.

On appeal, Rassier contends that the court erred when it concluded that maintaining a wind generator did not constitute a private nuisance, and that Houim did not violate any restrictive covenants when he erected the generator and its tower.

In North Dakota, a nuisance is defined by statute. Section 42–01–02, NDCC, provides that:

"A private nuisance is one which affects a single individual or a determinate number of persons in the enjoyment of some private right not common to the public."

Section 42–01–01, NDCC, defines a nuisance, in part, as follows:

"A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission:

1. Annoys, injures, or endangers the comfort, repose, health, or safety of others;

.     .     .     .     .

4. In any way renders other persons insecure in life or in the use of property."

We have said that the common-law nuisance concept does not apply in North Dakota. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n.*, 337 N.W.2d 427 (N.D.1983) [common law does not apply when legislature has passed law on specific topic]; *see* NDCC § 1–02–01. Where, however, there is no conflict between the common law and a statute, common law remains relevant. *E.g., McLean County Comm'rs v. Peterson Excavating, Inc.*, 406 N.W.2d 674 (N.D.1987). Accordingly, we have applied aspects of common-law nuisance, in particular, the "coming to the nuisance" doctrine. *Jerry Harmon Motors, supra.*

Our statute provides that a nuisance may be created by "unlawfully doing an act," NDCC § 42–01–01, and, the defendant's unlawful act can be established by proving a violation of a statute, ordinance, or regulation which has the prohibited effect on the plaintiff's use of his property. *Jerry Harmon Motors, supra.* Rassier does not claim that Houim violated any statute, ordinance, or regulation.

Rather, Rassier claims that Houim "omitted to perform a duty" of care by maintaining a nuisance, "which is an unlawful act in itself." In *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313 (N.D.1986), we

discussed the duty which gives rise to a claim of nuisance, and contrasted it with the duty implicated in a negligence action.

"To render a person liable on the theory of either nuisance or negligence there must be some breach of duty on his part, but liability for negligence is based on a want of proper care, while ordinarily, a person who creates or maintains a nuisance is liable for the resulting injury to others regardless of the degree of care or skill exercised to avoid the injury. The creation or maintenance of a nuisance is a violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is a violation of a relative duty, the failure to use the degree of care required under particular circumstances in connection with an act or omission which is not of itself wrongful. Nuisance is a condition and not an act or failure to act, so that if a wrongful condition exists, the person responsible for its existence is liable for resulting damage to others." 380 N.W.2d at 317 [*quoting* 58 Am.Jur.2d *Nuisances* § 3 (1971)].

▬▬ "In determining whether a defendant's conduct is 'unreasonable' in a nuisance case, the test is not unreasonable risk or foreseeability as these terms are used in negligence cases." *Id.* (*quoting* 58 Am.Jur.2d *Nuisances* § 34.) The duty which gives rise to a nuisance claim is the absolute duty not to act in a way which unreasonably interferes with other persons' use and enjoyment of their property. "The basic criterion in the whole law of private nuisance is reasonableness of conduct. Neighbors can coexist smoothly only so long as each makes such uses of the land which he controls as is reasonable in view of the circumstances of his action." 5 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* ¶ 704[1] (1991). It is in assessing this duty, which is explicit in the provisions of section 42–01–01, NDCC, that omitting to perform a duty which "[a]nnoys, injures, or endangers ... others" is a nuisance, that the common law of nuisance remains relevant. *See* Ferdinand S. Tinio, Annotation, *"Coming to Nuisance" As A Defense or Estoppel*, 42 ALR3d 344, 355 § 4 (1972) [view that "coming to nuisance" is factor considered with all evidence respecting reasonableness of use].

The trial court concluded that "there exists no duty cognizable at law upon which [Rassier] can rest her case as to the alternative predicate in Section 42–01–01 [NDCC] (breach of duty). The only possible duty here would be the general duty of care of Section 9–10–01 [NDCC]." This conclusion appears to be based on statements in *Jerry Harmon Motors, supra,* that the plaintiff's failure to identify a duty imposed by law was significant. In that discussion, we also cited *Langer v. Goode,* 21 N.D. 462, 131 N.W. 258 (1911), for the proposition that no duty devolves absent a duty prescribed by law; the failure to do an act *not* required by law is not an unlawful act or omission under the nuisance statute. Thus, *Jerry Harmon Motors* might be read for the proposition that the "general duty of care" (negligence) does not support a nuisance claim.

In *Knoff,* we distinguished between nuisance and negligence principles, and observed that a nuisance may be created without negligence. But we also recognized, relying on *Kinnischtzke v. City of Glen Ullin,* 79 N.D. 495, 510, 57 N.W.2d 588, 596 (1953), that " '[n]egligence may or may not result in the creation of a nuisance, and, on the other hand, a nuisance may be created wholly without negligence.' " *Knoff,* 380 N.W.2d at 317.

With regard to the argument in *Knoff* that *Jerry Harmon Motors* held that only a statutory breach of duty creates an action for nuisance, we stated:

"American Crystal contends that our decision in *Harmon Motors, supra,* implies that only a breach of a duty imposed by statute or regulation will support an action for nuisance. American Crystal has, however, read our holding in *Harmon Motors* much too broadly. We merely noted that Harmon Motors had failed to establish any law or regulation making GTA's activities unlawful, and which would meet Harmon Motors' 'heavy burden' of establishing liability

after it had come to the alleged nuisance.... *Harmon Motors* does not stand for the proposition that only a violation of a statute or regulation will constitute breach of a duty which gives rise to an action based upon nuisance." *Knoff*, 380 N.W.2d at 317–18.

We construe the decision of the trial court in this case as complying with this explanation in *Knoff* of our opinion in *Jerry Harmon Motors*. The Memorandum Opinion and Order for Judgment indicates that the court engaged in a weighing of the circumstances, stating as a basis for denying Rassier's claim the fact that she "came to the nuisance."

In *Jerry Harmon Motors, supra,* we recognized the applicability of the coming-to-the-nuisance doctrine to a nuisance claim under section 42–01–01, NDCC. We also indicated that the principle is one of the factors considered in determining whether a nuisance exists, *i.e.*, whether the defendant created a condition which unreasonably interfered with plaintiff's use of property. We noted that anyone who comes to a nuisance "has a heavy burden to establish liability." *Id.*

Other factors relevant to the reasonableness of a defendant's interference with the plaintiff's use of property include a balancing of the utility of defendant's conduct against the harm to the plaintiff, plaintiff's attempts to accommodate defendant's use before bringing the nuisance action, and plaintiff's lack of diligence in seeking relief. *Powell on Real Property, supra* at ¶¶ 704[2]–704[3], *see also* Restatement (Second) of Torts §§ 822, 826–30 (1977).

The trial court's conclusion that Houim's maintaining a wind generator was not a nuisance included the necessary finding that Houim did not unreasonably interfere with Rassier's use of her property. Findings of fact will not be set aside unless they are clearly erroneous. NDRCivP 52(a). A finding of fact is clearly erroneous when, although there is some evidence to support it, a reviewing court, on the entire record, is left with a definite and firm conviction that a mistake has been made. *Gillmore v. Morelli,* 472 N.W.2d 738 (N.D.1991).

Rassier points to evidence supporting a finding of unreasonable interference, including the fact that the wind generator is located approximately 40 feet from her house and created noise measured by an environmental scientist from the North Dakota State Department of Health and Consolidated Laboratories, and a mechanical engineer who worked in the area of psychoacoustics, in the range from 50 to 69 decibels. Those North Dakota communities which have enacted noise ordinances prohibit noise exceeding 55 decibels in residential areas; Mandan has not enacted such an ordinance. Both witnesses indicated that noise at the measured levels could be irritating, stressful, and interfere with sleep. Rassier stated that her family's use of the yard was interfered with because the noise disrupted conversations. Rassier also indicated a concern with the safety of locating the generator and its tower near her house; she described one instance when she found a large ice chunk in her yard, an ice chunk she suspected was thrown from the wind generator.

Houim points to evidence that under these circumstances the wind generator does not unreasonably interfere with Rassier's use of her property. The wind generator was put up in 1986; Rassiers moved onto the adjoining lot in 1988. Rassier brought this action two years after her family moved into their house, after conflicts arose between Mr. Rassier and Houim. Several neighbors testified for Houim; no neighbor, other than Rassier, complained of noise from the wind generator. Houim offered to teach the Rassiers to turn the wind generator off when the noise bothered them, but they did not attempt this accommodation. Finally, Houim said that the tower supporting the generator was engineered for a larger model than his, and that safety features eliminated the danger of blades, or ice, being thrown from the wind generator.

After reviewing this evidence, we are not left with a definite and firm conviction that

the trial court made a mistake in finding that Rassier had not proved a nuisance.

■ Rassier also argued that Houim erected the wind generator contrary to restrictive covenants applicable to their housing development. The evidence demonstrated that Houim, Rassier, and several other residents of the development had built on their lots without seeking approval from an architectural review board established under the covenants Rassier argued Houim had violated. The trial court concluded that Houim had not violated the covenants after finding that the developer and the residents of the subdivision had abandoned those provisions. *See Allen v. Minot Amusement Corp.*, 312 N.W.2d 698 (N.D.1981) [right to enforce restriction or reservation may be lost by waiver or acquiesence]. The finding of the court is not clearly erroneous.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and JOHNSON, J., concur.

MESCHKE, Justice, concurring and dissenting.

I agree with much of what Justice VandeWalle writes for the majority to dispel confusion and to clarify the law of private nuisance. The majority correctly states that, under NDCC 42–01–01, there is an absolute duty not to act in a way that unreasonably interferes with the use and enjoyment of the property of other persons.

That absolute duty is not dependent on violation of any other express law, ordinance, or regulation. Justice VandeWalle's analysis thus demonstrates that the trial court's conclusion, that "[n]othing in [the] operation (noise) [of Houim's wind turbine] is in violation of any law, statute, ordinance or regulation since there are no such legal restrictions on noise or wind turbines," was unsound. The trial court employed a mistaken view of the law of private nuisance in making its findings.

Yet the majority opinion "construe[s]" the decision of the trial court "as complying" with a correct view of the law. Too generously, this construction is given in spite of the trial court's contorted conclusion that "there exists no duty cognizable at law upon which [Rassier] can rest her case as to" a breach of duty. The majority opinion goes on to "indicate[ ]" that the trial court properly "engaged in a weighing of the circumstances," and to conclude that the trial court made "the necessary finding that Houim did not unreasonably interfere with Rassier's use of her property." The majority opinion also approves the trial court's "basis for denying Rassier's claim [in] the fact that she 'came to the nuisance.' "

I believe that the trial court did not properly weigh the relevant factors, did not make necessary findings, and inappropriately applied "coming to the nuisance" as a controlling factor. Therefore, I respectfully dissent.

Excessive noise can annoy, disturb, and unreasonably interfere with other persons in the use and enjoyment of their homes. Consider some illustrative decisions. *Parker v. Reaves*, 505 So.2d 323 (Ala.1987) (Noise and odors of dogs that interfered with neighbors' enjoyment of their homes enjoined as private nuisance); *Anne Arundel County Fish & Game Conservation Ass'n v. Carlucci*, 83 Md.App. 121, 573 A.2d 847 (1990) (Trap and skeet shooting club required to implement noise abatement for adjoining homeowners in adjacent residential zone); *Wade v. Fuller*, 12 Utah 2d 299, 365 P.2d 802 (1961) (Noise from drive-in cafe enjoined as nuisance to nearby residences); *Kolstad v. Rankin*, 179 Ill. App.3d 1022, 128 Ill.Dec. 768, 534 N.E.2d 1373 (1989) (Gunsmith's private firing range enjoined as nuisance to neighboring homes in rural agricultural area); *McQuade v. Tucson Tiller Apartments, Ltd.*, 25 Ariz.App. 312, 543 P.2d 150 (1975) (Music concerts at shopping center enjoined as private nuisance to adjacent apartment dwellers); *Rose v. Chaikin*, 187 N.J.Super. 210, 453 A.2d 1378 (1982) (Windmill that produced noise levels to 61 decibels enjoined as unreasonable interference with neighbors' use and enjoyment of their

homes). Excessive noise is a classic breach of duty, and it is a private nuisance to a neighbor in a residential area.

There are good reasons for this. "The ability to look to one's home as a refuge from the noise and stress associated with the outside world is a right to be jealously guarded. Before that right can be eroded in the name of social progress, the benefit to society must be clear and the intrusion must be warranted under all of the circumstances." *Rose*, 453 A.2d at 1383. *See also* NDCC 12.1–31–01(2) (Crime of disorderly conduct includes annoyance by "unreasonable noise.") "The gravity of the harm from noises that disturb a person's sleep, for example, is ordinarily much greater when the noises occur at night than it is when the noises occur in the daytime." Restatement (Second) of Torts § 827 cmt. b, p. 125 (1979). *See also* 58 Am.Jur.2d *Nuisances* § 136 (1989): "In general, all tangible intrusions, such as noise, ... fall within the realm of nuisance,...."

When Houim installed his wind generator, his lot and all other lots (including the adjacent vacant lot later purchased by Rassier) in Ventures First Addition were subdivided for residential purposes, zoned for residential use, and protected by recorded covenants "for residential purposes only." All uses for "commercial purposes" were prohibited.

The character of the locality at the time that the interfering activity is begun is one of the most important factors to be weighed. The Restatement explains:

> Even between socially desirable and valuable uses of land there is a degree of incompatibility that, in some cases, is so great that they cannot be carried on in the same locality. A slaughterhouse, for example, may be indispensable to the community, but it usually renders other land in its immediate vicinity unfit for residential use and enjoyment. This incompatibility between the various beneficial uses to which land may be put has, in nearly all communities, resulted in a segregation of certain uses in certain localities in order to avoid unnecessary conflict between those that are highly incompatible. Thus some localities come to be devoted primarily to residential purposes, others to industrial purposes, others to agricultural purposes and so on. Sound public policy demands that the land in each locality be used for purposes suited to the character of that locality and that persons desiring to make a particular use of land should make it in a suitable locality.

Restatement (Second) of Torts § 827 cmt. on Clause (d), p. 127. *See also* Annotation, *"Coming to Nuisance" As A Defense or Estoppel*, 42 ALR3d 344, 357 § 5 ("Location of Nuisance") (1972): "[T]he nature of the area where the nuisance is carried on—whether, for example, the area is primarily residential, industrial, or commercial—may affect the weight to be given to the defense that the complainant moved into the area after the defendant had done so." In this case, all the adjacent lots were intended for residential purposes at the time that Houim installed his wind turbine.

When a commercial nuisance comes to a residential area, application of the "coming-to-the-nuisance" factor to a residence built there later is inappropriate. The noise potential of Houim's wind turbine was unreasonable to an adjacent home and was thus incompatible with a residential neighborhood.

We have recognized the "coming-to-the-nuisance" factor in the context of an earlier agricultural industry (grain elevator) affecting an automobile dealership later located in an adjacent commercial district. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n.*, 337 N.W.2d 427 (N.D.1983). While that factor is no doubt important to protecting an agricultural industry in an agricultural state, it should not be applied to an inappropriate activity that interferes with the use of property planned, zoned, and dedicated to residential purposes.

Most courts hold that, in itself and without other significant factors, the "coming-to-the-nuisance" factor will not bar a plaintiff's nuisance claim. Powell explains:

The rationale for the prevailing rule rejecting "coming to the nuisance" as a sufficient defense is that otherwise those who settled in an area would acquire complete control over the future of adjoining and nearby land, and the fluidity of land use—a basic aspect of the American economy—would be reduced.

5 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* ¶ 704[3], at 64–48 to 64–49 (1991). Here, residential development was planned, not unpredictable. Houim knew that the adjacent lot in this residential area was intended for a home. In my opinion, therefore, the trial court's conclusion, that "this action fails ... because of the application of the principle of coming to a nuisance," was mistaken.

Houim's wind turbine on part of his lot was not well suited to this residential locale. On the other hand, Rassier's use of her property for a residence is well suited to the character of the locale. Restatement (Second) of Torts § 831. *See also* 58 Am.Jur.2d *Nuisances* § 149. Because I would reverse and remand for necessary findings and for a decision properly weighing relevant factors with a correct view of the law of private nuisance, I respectfully dissent.

LEVINE, J., concurs.